**In re CONTINENTAL AIRLINES CORPORATION, Debtor.**

**In re CONTINENTAL AIRLINES, INC., Debtor.**

**In re TEXAS INTERNATIONAL AIRLINE, INC., Debtor.**

**In re TXIA HOLDINGS CORPORATION, Debtor,**

v.

**NATIONAL MEDIATION BOARD, Walter C. Wallace, Chairman, and Robert A. Harris, Member, and Helen Witt, Member, Members Constituting the National Mediation Board, Defendants.**

Bankruptcy Nos. 83–04019–H2–5, 83–04020–H1–5, 83–04021–H3–5 and 83–04022–H3–5. Adv. No. 83–2493.

United States Bankruptcy Court, S.D. Texas Houston Division.

Jan. 6, 1984.

'See also Bkrtcy., 38 B.R. 67.

John J. Gallagher, Jr. and Linda Pence, Washington, D.C., for debtor.

Allen L. Lear, Civ. Div., Dept. of Justice, Washington, D.C., for National Mediation Bd. ·

Wilma B. Liebman and Roland P. Wilder, Jr., Washington, D.C., for International Brotherhood of Teamsters.

## ORDER AND OPINION OF THE COURT

T. GLOVER ROBERTS, Bankruptcy Judge.

This cause came on for hearing on December 20, 1983 upon several pending motions of the parties, all arising out of an adversary proceeding (No. 83–2493–H3) filed by the debtor[1] (hereinafter referred

---

**1.** The main case is a Chapter 11 bankruptcy proceeding filed by four separate, but related corporations, Continental Airlines, Inc. (Case No. 830402H15), Texas International Airlines, Inc. (Case No. 83–0421–H3–5), TXIA Holdings Corporation. (Case No. 83–0422–H3–5) and Continental Airlines Corporation (Case No. 83–04109–H2–5). These cases were consolidated by previous Order of this Court for administrative purposes and have been assigned a consolidated Case Number, being 83–4190–H2–5. The consolidated debtor is in the airline business and is operating as Debtor-In-Possession pursuant and subject to 11 U.S.C. Sec. 1101(1), Sec. 1107 and Sec. 1108 (the Bankruptcy Code), Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2628.

to as "Continental") against the National Mediation Board, its chairman, Walter C. Wallace and a second Board Member, (hereinafter collectively referred to as "NMB"). The complaint in this bankruptcy adversary proceeding, filed on November 17, 1983 sought a Declaratory Judgment, Injunctive Relief and invocation of the Bankruptcy automatic stay arising out of various Board Orders issued in connection with NMB case Nos. R–5345 and R–5346 requiring an immediate election of Continental employees in the fleet and passenger service classes to determine if they are to be represented by the International Brotherhood of Teamsters (IBT). The Continental adversary complaint charges various allegations on the part of the Board, including its absolute failure to perform its statutory duty to investigate a representation dispute.

Due to the time necessities of the facts of this case, as stated below, the only issue addressed by this Order at this time is the applicability of the bankruptcy automatic stay proceeding of 11 U.S.C. Section 362.

The Court is of the opinion that the facts and the law applicable to the case at this time warrant the explicit granting of the automatic stay of 11 U.S.C. Section 362, for the following reasons.

*Factual Background*

According to the documentary evidence attached to the pleadings, on October 1, 1982, the International Brotherhood of Teamsters, Airline Division (IBT) filed standard applications with the NMB pursuant to 45 U.S.C. Sec. 152, Ninth, seeking to be certified as the representative of the Fleet Service and Passenger Service employees of Continental Airlines. This application was apparently precipitated by notification of Texas International Airlines, one of the mergees in the Continental/Texas International merger, to the IBT that, on the merger date, all of the employees in the crafts represented by the Teamsters would become subject to Continental's employment policies and its agreement with the union would no longer be effective.

The NMB then began to process the IBT's application and on February 11, 1983, the NMB issued a notice of hearing ordering a public hearing concerning (a) the proper structure, or "crafts or classes", into which employees should be grouped for the potential election, and (b) what specific job classes should be included in the group or groups found proper by the Board. The hearings were subsequently held April 5–7, 26–29 and June 2–3 of 1983, Continental and IBT responding to the application and participating fully in the hearings.

On August 11, 1983, the NMB issued an Order involving craft/class determination holding that the facts required that the affected employees of Continental be grouped into two separate crafts or classes for purposes of a potential election. According to the fact statements by both Continental and the NMB in its briefs, before this Court, the NMB then apparently put its administrative wheels in motion for purposes of conducting this election.

On September 24, 1983, Continental filed with the United States Bankruptcy Court for the Southern District of Texas, a petition for relief under Chapter 11, Title 11 of the United States Code. On October 4, 1983, Continental filed a Motion for Stay of Proceedings with the NMB. In these documents, Continental requested that all further handling of the NMB's representation cases as it related to Continental be suspended indefinitely pending the resolution of the bankruptcy petition, citing various reasons. On October 20, 1983, the Teamsters filed a related letter requesting NMB action, concerning changes on the form of the ballot.

Continental also filed with the NMB a supplemental Motion to Stay Proceedings or in the alternative to reopen the record and to reconsider findings. The basic argument put forth by Continental in its request to the NMB for reconsideration was its belief that since August 11, 1983, the facts on which Continental believed the NMB to have passed its decision had changed dramatically. Continental stated

that its employee members had been reduced by sixty percent (60%) and its domestic service had been dramatically reduced from 87 to 25 stations, since the date of filing bankruptcy.[2]

On November 2, 1983, the NMB by its decision denied both Continental and the Teamsters request, holding that Continental remain subject to the Railway Labor Act and that a stay of the representation case would deny the employees their rights under that Act. In denying the stay, the NMB also found that Continental's Chapter 11 bankruptcy and changed circumstances should likewise not halt the election. The NMB also denied the Teamsters request for a modified balloting procedure. The NMB then instructed its agency representatives to move forward on the election procedures. The NMB states that on November 16, 1983 it provided Continental and the Teamsters copies of the official list of eligible voters, along with copies of sample ballots, election instructions and similar materials.

The NMB further states that it advised Continental and the IBT to submit objections, corrections or challenges to the list not later than December 9, 1983. Continental apparently made a subsequent request to extend the objection period to December 27, 1983 which was granted by the NMB.

The NMB further states that on November 17, 1983, it mailed ballots to the persons named on the list of eligible voters, setting a poll closing in Case No. R–5346 at 10:00 o'clock a.m. on Thursday January 12, 1984 and in Case R–5345 at 10:00 o'clock a.m. on Friday January 13, 1984.

In its ruling on November 2, 1983, the NMB made the following statement [3]:

The Board finds no basis for suspending further action in these cases. Under the Railway Labor Act, "any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any ... 'carrier' ", is a carrier subject to the Act. *There is no provision which compels the board to terminate its proceedings simply because a carrier files a petition in bankruptcy.* The suggestion that these cases be stayed until Continental has resumed normal operations under a plan of reorganization would deny employees the right to be represented when such representation may be most critical. *Similarly, the suggestion that the record be reopened to examine the carrier's post-bankruptcy operations would simply add months of additional delay to a matter which has been pending before this Board for more that a year.* (Emphasis supplied).

On November 16, 1983, Continental filed with this Court a Complaint and a Motion for Declaratory Judgment and Injunctive Relief. The complaint asked the Court to enjoin the NMB from conducting elections under 11 U.S.C. Sec. 105 and 28 U.S.C. 1651 until (a) the Court had approved Continental's plan of reorganization and (b) the NMB had completed "its statutory required investigation of the representation disputes in the 'new CAL' " or (c) further Order of the Court. It also requested that actions of the NMB be stayed pursuant to the requirements of 11 U.S.C. 362(a).

That say the Honorable Phil Peden, United States Bankruptcy Judge for the Southern District of Texas, heard the request for the Temporary Restraining Order, and at the conclusion of the hearing, orally denied Continental's motion for a Temporary Restraining Order. The record does not indicate that the alternative request by Continental to invoke the provisions of the auto-

---

**2.** Supplemental Motion to Stay Proceedings or in the Alternative to Reopen Record and to Reconsider Findings, NMB Case No. R–5345 and R–5346, p. 2, being part of the Appendix to Plaintiff's Post Argument Supplemental Brief in the Chapter 11 Adversary Proceeding subject to this Order.

**3.** Re: Case Nos. R–5344, R–5345 and R–5346 Continental Airlines/IBT 11 N.M.B. No. 18, November 2, 1983, being Part E of the Appendix to Plaintiff's Post Argument Supplement of Brief.

matic stay was addressed by the Court or argued by the parties at that time.

There is no ruling of record on the 362 stay question. The parties, Continental, the NMB and IBT have briefed the question in their present arguments, therefore presenting the issue before this Court at this time for consideration.

At the outset of this analysis, let it be said that this Court is acutely aware that a significant part of the litigation in the Continental Chapter 11 matters stem from a perceived conflict between the federal labor statutes and historical labor policy of our nation, and the federal bankruptcy statutes and the problems relating to the debtor's employees rights which may be affected by the debtor's exercise of its statutory right of reorganization. Obviously, these potential conflicts are to be resolved on an adversary proceeding by adversary proceeding basis as the over all Chapter 11 case of Continental proceeds. The thrust of this order and opinion is not intended to address at this time any of these conflicts raised by arguments of counsel, but to address the applicability of the Section 362 automatic stay as to this administrative agency, under the facts of the matter applying the rather plain, clear and unambiguous statutory language of the section in question.

With this caveat, we now turn to resolution of the automatic stay question.

*Applicability of Automatic Stay*

One of the primary issues on which this Court must focus in its role as a Court of specialized jurisdiction is whether the laws of bankruptcy are applicable to certain actions by federal agencies, and if so, under what circumstances. In the instant action, the debtor has asked that the provisions of the automatic stay, as defined in 11 U.S.C. Sec. 362, be applied to the National Mediation Board's actions and administrative processes involving Continental Airlines in Case Nos. R–5345 and R–5346. The Board has strenuously resisted the application of the automatic stay provision to the Bankruptcy Code in this regard, as has the IBT, an intervenor.

■ This Court well recognizes that the Bankruptcy Court may have jurisdictional powers broader under the new Code than under the old Act. However, this Court has no intention, nor does it believe that Congress so intended it, to become a Court of general jurisdiction where any matter is heard so long as a debtor is somehow involved. Unless an action "involves the administration or property of the debtor's estates", this Court will exercise its right to abstain where no justifiable reason can be demonstrated as to why the Court should hear the matter. *In re: Palmer Construction Company*, 7 B.R. 232, 233 (Bkrtcy.D.S.D.1980).

■ Where, however, the case involves a complicated reorganization of a corporate debtor in a Chapter 11 proceeding, and where one of the goals announced in open Court by this debtor is the reorganization of its labor cost structure, as well as all other operating cost elements of the company, this Court is of the opinion that a justifiable reason has been demonstrated by the debtor as to why the Court should hear the matter concerning the automatic stay provisions of Sec. 362, and such hearing is a legitimate exercise of this Court's jurisdictional powers.

The automatic stay is one of the fundamental debtor protections provided by the Bankruptcy Laws. S.Rep. 95–989, 95th Cong., 2nd Sess. 55, (1978) U.S.Code Cong. and Ad.News 5787, 5840–41.

Sec. 362, in relevant part, states that:

(a) except as provided in Section (b) of this Section, a petition filed under Section 301, 302 or 303 of this title operates as a stay applicable to all entities of

(1) the commencement of or continuation, .... of a judicial, administrative or other proceeding against the debtor that was ... commenced before the commencement of the case under this title ....

This section also lists certain exceptions to the automatic stay, including Section 362(b)(4) which provides, in relevant part:

(b) The filing of a petition under Section 301, 302 or 303 of this title does not operate as a stay.

(4) Under Subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. . . .

The NMB asserts that this exception applies to the ongoing investigation, election and certification process to determine union representation and, further that the Board's proceeding is not a "proceeding against the debtor" within the meaning of Section 362, and argues that therefore the automatic stay does not apply in the NMB activities. NMB essentially argues in its Motion to Dismiss the adversary proceeding that *National Labor Board v. Evans Plumbing Company*, 639 F.2d 291 (5th Cir.1981) is controlling. In that case, the Court found that NLRB actions were to "enforce the federal law regulating the relationship between employer and employee" and that those actions were the exercise of police or regulatory powers squarely within the 362(b)(4) exemption. By reference the NMB seeks to have a NLRB regulatory standard applied herein. The Board further contends that Judge Peden's denial of injunctive relief necessarily encompassed a finding that the automatic stay did not apply. As a rationale for this belief the NMB maintains in its brief that "Carriers, such as Continental, are not parties to NMB representation cases . . . other than the carrier's statutory obligation to provide the NMB with meaningful access to their books and records, their participation in the agency's administrative proceedings is optional, not mandatory . . . nor does the carrier have an obligation or right to participate as an advocate in the agency's representation proceedings. The extent to which carriers will be permitted to present their views is within the discretion of the NMB".[4] The Court rejects these contentions, as the evidence in the NMB proceedings is clearly to the contrary.

In discussing first, whether the actions of the NMB pursuant to its mandate under the Railway Labor Act came within the "police or regulatory power" exception the Court turns to legislative history of the Bankruptcy Code. In explaining Section 362(b)(4), the Congressional House Report comments:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), reprinted in (1978) U.S. Code Cong. and Ad.News 5963, 6299.

Congressman Don Edwards, Chairman of a Subcommittee of the Judiciary Committee considering the Bankruptcy Code stated:

> This Section 362(b)(4) is intended to be given a narrow construction in order to permit governmental units to pursue action to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate. 124 Cong.Record H 11089, reprinted in (1978) U.S.Code Cong. and Ad.News 6436, 6444–6445.

> The scope of the paragraph is broad. All proceedings are stayed including arbitration, administrative and judicial proceedings. Proceedings in this sense encompasses civil actions and all proceedings even if they are not before governmental tribunals. S Report No 95–989, 95th Cong., 2nd Sess. (1978) 50, U.S.Code Cong. & Admin.News 1978, p. 5836.

Are the actions of the NMB police or regulatory in nature? The term "police or regulatory power" refers to the enforcement

---

**4.** Motion to Dismiss by NMB p. 9.

of laws affecting health, welfare, morals and safety. It does not refer to administrative or regulatory laws that directly conflict with the control or reorganization of the res or property of the Bankruptcy Court. *State of Missouri v. U.S. Bankruptcy Court, Etc.* 647 F.2d 768 (8th Cir. 1981). Legislative history clearly states that the 362(b)(4) exception is to be narrowly construed. Recent cases have held that, in addition to narrow construction, the exception should be applied only where there is an "urgent" need for the exercise of police power. *Matter of IDH Realty*, 16 B.R. 55 (Bkrtcy.E.D.N.Y.1981), *King Memorial Hospital Inc. v. Department of Health and Services, State of Florida*, 4 B.R. 704 (Bkrtcy.S.D.Fla.1980). The Court cannot find the election currently being conducted impacts urgently on public health, safety, welfare, or morals. Furthermore, the Sec. 362(b)(4) exception applies only to governmental units seeking to "enforce" their power. Even if the powers of the NMB were police or regulatory in nature, the NMB has no enforcement authority.

> Under this Act (Railway Labor Act) Congress did not give the Board discretion to take or withhold action to grant or deny relief. It gave no enforcement function.

*Switchmen's Union v. NMB*, 320 U.S. 297 at 305, 64 S.Ct. 95 at 99, 88 L.Ed. 61 (1943). The NMB in their Memorandum in Support of their Motion to Dismiss cites *United States v. Feaster*, 410 F.2d 1354 (5th Cir. 1969) wherein the Fifth Circuit Court of Appeals describes the investigation and election proceeding as an "administrative process" which was incomplete without the Mediation Board's certificate. The certificate was the ultimate finding of fact prerequisite to enforcement of the Courts... *Feaster*, 410 F.2d at 1364.

The cases presented to this Court by the NMB as authority for the position that the NMB is not subject to the automatic stay are not cases involving the NMB but rather are cases in which the party seeking to avoid the automatic stay has clearly defined statutory regulatory or police power. The NLRB was held to exercise regulatory and police power in *NLRB v. Evans Plumbing Company*, 639 F.2d 291 (5th Cir.1981). The Secretary of Labor acting under the provisions of the Fair Labor Standard Act was also held to be exercising police or regulatory powers when he brought action to enjoin individuals from violating that act. *Donovan v. TMC Industries, LTD*, 20 B.R. 997 (D.C.N.D.Ga. 1981). Regarding the functions of the NMB, however, there has been no authority presented to it that could lead the Court to find that the NMB has either been statutorily granted or exercises regulatory or police power. It investigates, it conducts elections and it certifies in representation disputes. It has no enforcement authority, and it does not enforce compliance with 45 U.S.C. Sec. 152, Ninth. In *Evans*, (supra) the Fifth Circuit Court of Appeals found that the action taken by the NLRB was to "enforce the federal law". *Evans* 639 F.2d at 293. The NLRB is expressly granted authority to monitor "unfair labor practices" and routinely brings "technical refusal to bargain" cases against employees to enforce their mandate under federal statutes. *Switchmen's Union*, (supra) specifically held that the NMB has no enforcement power and refers to the representation proceeding as an "administrative determination". *Switchmen's Union*, 320 U.S. at 301, 64 S.Ct. at 97. The Court herein is compelled by the plain language of 45 U.S.C. Sec. 152, Ninth and the authorities presented to it to find that the present investigation and election are administrative proceedings and do not constitute the exercise of police or regulatory authority and therefore does not come within the (b)(4) exception to 11 U.S.C. 362(a)(1).

■ The Board admitting that its proceeding is administrative [5] argues alternatively that its proceeding is not a "proceeding against the Debtor" [6] within the mean-

---

**5.** Memorandum in support of Motion of the United States for a Protective Order, p. 2.

**6.** Memorandum in Support of Motion of United States to Dismiss p. 9.

ing of Section 362(a)(1). Again, the evidence in this case is to the contrary. In its Findings Upon Investigation dated August 11, 1983, in Case No. R–5345 and R–5346, cited as 10 NMB No. 141 [7], Continental clearly is an involved party, and the Board made substantial Findings of Fact involving Continental's operations (pp. 437–445 of 10 NMB No. 142). An analysis of those findings indicates that all finding were predicated on the size and extent of Continental's operations, post-merger, pre-bankruptcy. The recent proceedings of the NMB [8] clearly identify the parties to this administrative proceeding as being the International Brotherhood of Teamsters (IBT) and Continental. To accept the argument that the positions of IBT and Continental are not one against the other would be a sham. Clearly, the two parties, IBT and Continental have adversary interests which bring the NMB proceedings within the purview of Sec. 362(a) of the Bankruptcy Code.

It should be noted that there has been no request through any formal pleading to lift the automatic stay. The only discussion by the NMB is that the stay does not apply.

This Court hereby holds that the automatic stay does apply to the matters in question, and all Board actions concerning the pending election to determine the union representation of Continental employees are hereby stayed until further order of this Court. The NMB is further ordered to seal any ballots that it has received in this election, and they are to remain uncounted and unrecorded until further order of this Court.

---

7. Appendix to Plaintiff's Post Argument Supplemental Brief, part A.

8. Id., part A, B and E.