**In the Matter of COMMONWEALTH COS., INC., Commonwealth Electric Co., Inc., Debtors.**

Bankruptcy Nos. BK87–2456, BK87–2457.

United States Bankruptcy Court, D. Nebraska.

Dec. 2, 1987.

Joseph Badami, Lincoln, Neb., for Commonwealth Companies.

Robert Craig, Omaha, Neb., Steven Russell, Lincoln, Neb., for Creditors' Committee.

Robert Okun, Washington, D.C., for the U.S.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter was heard on September 29, 1987. Joseph Badami appeared for Commonwealth Companies, Robert Craig appeared for the Creditors' Committee and Steven Russell and Robert Okun appeared for the United States. At the hearing the Court requested the parties to submit written legal arguments.

### Statement of Facts

The United States requests either an exception from the automatic stay under Sec-

tion 362(b)(4) or relief from the stay for cause under Section 362(d) in order to join debtors, Commonwealth Companies, Inc., and Commonwealth Electric Co., Inc., in the United States pending civil fraud action against Fischbach & Moore, Inc., S. Lofgren, P.T. Mahoney, P.B. Murphy and P.C. Schorr, III. In its civil fraud action, the United States alleges unjust enrichment and payment by mistake as well as that Fischbach, et al., violated the False Claims Act, 31 U.S.C. Sections 3729–33, which Act provides for treble money damages. The gravamen of the complaint is that debtors and Fischbach, et al., submitted false and inflated claims on a Tennessee electrical construction project, 75 percent funded by the United States. Because the debtors had filed for Chapter 11 relief prior to the United States filing its claim against Fischbach, et al., the debtors were not named in the United States complaint.

The United States contends that an action under the False Claims Act qualifies for the exception from the stay provided in Section 362(b)(4) and points to case law supporting this position. Alternately, the United States asserts that the promotion of judicial economy and the fixing of the amount of debtors' liability are sufficient cause under Section 362(d) to lift the stay. In its pending civil fraud action, the United States seeks damages, imposition of a constructive trust and/or an equitable lien upon the fraud proceeds. However, if the United States is permitted to proceed with its civil action against debtors, the United States agrees to not seek the enforcement of a constructive trust and/or equitable lien against debtors, but will request judgment for the damages and penalties claimed in its complaint.

The debtors and Creditors' Committee ("debtors") contend that legislative history and case law direct a narrow interpretation of Section 362(b)(4). The debtors claim that an exception to the stay should be permitted only when the public health and safety is threatened or when the governmental unit is preventing or stopping ongoing violations of police or regulatory laws. The debtors argue that there is no ongoing fraud in the instant case and thus no public health or safety threat. The debtors contend that the sole purpose of the United States request is a pecuniary one—to improve its status from an unsecured creditor with a contingent, unliquidated claim to that of a judgment creditor. Further, the debtors argue that relief for cause under Section 362(d) is not appropriate because: 1) The United States is not showing irreparable harm; 2) the debtors should be provided a "breathing spell" to plan their case administration; 3) the stay would be pointless if every creditor were allowed a lifting of the stay to affix damages; and 4) the added cost to debtors in defending additional lawsuits would be a burden.

### Issues Presented

I. Whether prosecution under the False Claims Act satisfies the exception from the automatic stay provided in Section 362(b)(4)?

II. Whether the public policy of promoting judicial economy and the liquidation of a claim against debtor are cause sufficient to allow relief from the automatic stay under Section 362(d)?

### Analysis

■ I. Section 362(b)(4) provides that the filing of a petition does not operate as a stay "of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4) (1987). Thus, Section 362(b)(4) "excepts" certain actions from the automatic stay activated upon the filing of a petition for relief. Both the United States and debtors look to the legislative history of Section 362(b) to interpret the section's intent. The relevant passages are:

1. This section [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions *to protect the public health and safety* and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

Debtors' reply brief at 1 (citing 124 Cong. Rec. H 11089, *reprinted in* 1978 *U.S.Code Cong. & Admin.News* 5787, 6444–45 (Congressman D. Edwards) (emphasis not in original)).

2. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud ... laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay.

United States Memorandum in Support of Motion at 4–5 (citing H.Rep. 95–595 at 343, 1978 *U.S.Code Cong. & Admin.News* 6299 (emphasis not in original)).

An additional passage from the legislative history not mentioned in the briefs but which the Court believes relevant reads: "Subsection (b) lists five exceptions to the automatic stay. *The effect of an exception is not to make the action immune from injunction."* H.Rep. 95–595 at 342, 1978 *U.S.Code Cong. & Admin.News* 6298 (emphasis added). Additionally, in its general discussion of the automatic stay, the House Report explains the purpose of the exception:

Under present law, there has been some overuse of the stay in the area of governmental regulation. For example, in one Texas bankruptcy court, the stay was applied to prevent the State of Maine from closing down one of the debtor's plants that was polluting a Maine River in violation of Maine's environmental protection laws. In a Montana case, the stay was applied to prevent Nevada from obtaining an injunction against a principal in a corporation who was acting in violation of Nevada's anti-fraud consumer protection laws. The bill excepts these kinds of actions from the automatic stay. The States will be able to enforce their police and regulatory powers free from the automatic stay. The bankruptcy court has ample additional power to prevent damage to the bankrupt estate

by such actions on a case-by-case basis. By exempting these State actions from the scope of the automatic stay, the court will be required to examine the State actions more carefully, and with a view to protecting the legitimate interests of the State as well as of the estate, before it may enjoin actions against the debtor or the estate.

H.Rep. at 175, 1978 *Code Cong. & Admin. News* 6135 (footnotes omitted).

■ The United States argues that the legislative language, *supra* p. 2, stating that the exception from the stay should not be applied to "actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate" is broadened by the language in the second passage, *supra* p. 3, stating that the exception does apply when a governmental unit is "attempting to fix damages for violation of such a law." However, the Court finds the United States argument unpersuasive. The specific Congressional statement that "[t]he effect of an exception is not to make the action immune from injunction" and the more general language discussing the purpose of the automatic stay, *supra* p. 3, set forth the parameters intended by Congress for the Section 362(b)(4) exception. In other words, the type of governmental action Congress anticipated to be excepted from the stay is a circumstance which requires injunctive relief, and the type of damages intended to be permitted are those accompanying or following an injunctive action.[1]

In *Cournoyer v. Town of Lincoln,* 53 B.R. 478 (D.R.I.1985), the District Court of Rhode Island listed several examples of damage actions excepted under Section 362(b)(4).

*In Re Cousins Restaurant,* 11 B.R. 521 (Bankr.W.D.N.Y.1981) (permitting enforcement of zoning regulation where it would force restaurant debtor to stop operating); *In Re Porter,* 42 B.R. 61,

---

1. The United States Memorandum contains an exhaustive list of decisions permitting the Section 362(b)(4) exception for governmental actions enforcing its regulatory powers—which actions include other remedies than injunctive relief; however, the decisions appear to involve circumstances where the enforcement of the regulation will protect either the public health or safety, (United States Memorandum in Opposition to the Reply and Supplemental Reply at 3–4) which is not pleaded here.

64–67 (Bankr.Tex.1984) (permitting enforcement of order padlocking debtor's premises, and denying him use thereof, where premises had been found to be used for prostitution and to constitute a civil nuisance); *In Re Thomassen,* 15 B.R. 907 (9th Cir.1981) (permitting revocation of debtor's medical license where debtor was found to have committed acts of malpractice); *In Re Colonial Tavern, Inc.,* 420 F.Supp. 44 (D.Mass.1976) (permitting suspension of liquor license where debtor was found to have operated business in violation of local laws regulating closing hours).

*Id.* at 483. In each case the penalties or damages assessed were non-monetary.

■ From the decisional law and the legislative passages quoted above, the Court is convinced that Congress did not intend to include purely pecuniary actions in the exception from the automatic stay provided by Section 362(b)(4). To determine what is a "pecuniary action," several of the decisions cited by both the United States and debtors set forth "public purpose" and "pecuniary purpose" tests to aid in this analysis. *See e.g., In Re Wellham,* 53 B.R. 195 (Bankr.M.D.Tenn.1985); *In Re Herr,* 28 B.R. 465 (Bankr.D.Me.1983). While the Court acknowledges that these tests are essentially balancing tests—a function of the particular facts, the decision by the Bankruptcy Court in *In Re Wellham,* 53 B.R. 195 (Bankr.M.D.Tenn.1985), closely parallels the instant facts. In *Wellham,* the United States sought, *inter alia,* damages under the False Claims Act, alleging that debtors "intentionally defrauded the government by supplying substandard metals to ... a procurement agency of the Department of Defense." *Id.* at 196. The United States unsuccessfully argued that the public safety was threatened, claiming the exception was necessary to determine where the substandard materials were used and whether the materials created a risk to members of the United States Armed Forces. However, the *Wellham* court held that the false claim action could not:

> [U]nder either the pecuniary purpose test or the public policy test, properly be characterized as an enforcement of police

or regulatory powers but is merely an action for damages. While the government has articulated a public policy reason for continuing the action, the court is not convinced that the reason propounded is the government's primary motivation.

*Id.* at 198. In the case at bar, the United States makes neither a public safety nor a public health argument.

Also persuasive to the Court is the pecuniary intent exhibited by Congress when it enacted Title 31 of the United States Code: "Be it enacted by the Senate and House of Representatives [that] ... [c]ertain general and permanent laws ... related to money and finance are revised, codified, and enacted as title 31, United States Code, 'Money and Finance'...." 96 Stat. 877 (1982). Not only is title 31 entitled "Money and Finance" but the False Claims Act, Sections 3729–33, are contained in Chapter 37 of title 31, entitled "Claims." The preface to the Act does not include a public health or safety purpose. *Id.*

Therefore, the Court finds that the request by the United States to except its proposed action against debtor under the False Claims Act to be solely for the pecuniary advantage of the United States and thus does not satisfy the intent of the Section 362(b)(4) exception as clarified by its legislative history and subsequent decisional law.

■ II. The Court recognizes that the explicit language of Section 362(d) allowing the automatic stay to be lifted "for cause" does not require that the party requesting relief hold a security interest in debtor's property. But, even if the Court were to permit an unsecured party to seek relief under this Section, that party must meet the same tests which have been utilized by courts when allowing relief for secured entities. *See e.g., In Re Crawley,* 53 B.R. 40, 42 (Bankr.D.Minn.1985) (Relief from stay granted only in "very compelling circumstances where it can be shown that unusual and/or irreparable harm will be caused...."); *In Re Bock Laundry Machine Co.,* 37 B.R. 564, 566 (Bankr.N.D. Ohio 1984) (Test is whether any "great

prejudice" to either the estate or debtor will result from continuation of the civil suit); *Matter of Johns–Manville Corp.*, 26 B.R. 405, 410 (Bankr.S.D.N.Y.1983) (Scope of stay narrowly focused on protection of debtor only). In the instant case the United States has pleaded no irreparable harm. Obviously, the United States possesses no collateral which is either deteriorating or depreciating. In contrast, the debtors have pleaded that the estate will be harmed if they have to defend themselves in this civil action and that they will be greatly prejudiced if they aren't able to properly plan the administration of the bankruptcy case.

The Court finds no proof of irreparable harm to the United States and finds that neither judicial economy nor liquidation of its claim are sufficient compelling circumstances to lift the stay. Therefore, the Court will not grant relief to the United States "for cause." Debtors' right to organize and plan the administration of the estate outweighs the United States' claim of judicial economy and need to liquidate its claim.

Separate Journal Entry shall be filed overruling the motion of the United States.