In the Matter of BALLENTINE BROS., INC., Debtor.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff,

v.

BALLENTINE BROS., INC.; Adams Bank & Trust Company; the County of Keith, Nebraska; Firmin Q. Feltz; the United States of America, Acting Through the Farmers Home Administration, United States Department of Agriculture, Defendant.

Bankruptcy No. BK83–182.
Adv. No. A86–307.

United States Bankruptcy Court,
D. Nebraska.

May 12, 1988.

John Pierce and Daniel Klaus of Rembolt, Ludtke, Parker & Berger, Lincoln, Neb., for Equitable.

Steven Turner of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for Adams Bank & Trust Co.

Wayne Griffin, North Platte, Neb., for Firmin Q. Feltz.

Vince Powers, Lincoln, Neb., for Keith County.

David Hahn, Lincoln, Neb., for Ballentine Bros., Inc.

## MEMORANDUM

TIMOTHY J. MAHONEY, Bankruptcy Judge.

An evidentiary hearing on the Equitable Life Assurance Society of the United States ("Equitable") request for declaratory judgment was held December 7, 1987, at North Platte, Nebraska. John Pierce and Daniel Klaus of Rembolt, Ludtke, Parker & Berger of Lincoln, Nebraska, appeared for Equitable; Steven Turner of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim of Omaha, Nebraska, appeared for Adams Bank & Trust Company f/k/a Bank of Brule ("Adams"); Wayne Griffin of North Platte, Nebraska, appeared for Firmin Q. Feltz; Vince Powers of Lincoln, Nebraska, appeared for Keith County and David Hahn of Lincoln, Nebraska, appeared for Ballentine Bros., Inc., ("debtor"). At the hearing the Court ordered the parties to submit briefs on the legal issues raised at the hearing.

### Statement of Facts

In June, 1975, Equitable recorded its mortgage securing a promissory note between itself and debtor. In March, 1979, a similar transaction between FmHA and debtor occurred and again in August, 1981, between Adams and debtor. The same real estate of debtor was encumbered in these three mortgages. Subsequently debtor defaulted on the promissory notes as well as on its property tax obligations, and on February 2, 1983, debtor filed its petition for Chapter 11 relief.

In September of each year subsequent to debtor's order for relief, the Keith County, Nebraska, commissioners assessed and levied taxes on the real estate subject to the mortgages of Equitable, FmHA and Adams. At no time during this period did Keith County seek relief from the stay or file a claim in the bankruptcy proceedings.

In August 1985, Firmin Q. Feltz, one of the defendants in this action, purchased from Keith County four county treasurer's certificates of tax sale on the real estate subject to the mortgages of the above-described mortgagees. He did not have actual knowledge of debtor's bankruptcy filing. Mr. Feltz paid the taxes owing on the real estate for the second half of 1981, all of 1982 and 1983 and for the first half of 1984. As holder of the certificates of tax sale and to protect his interest in the real estate, Mr. Feltz continued to pay the real estate taxes due through 1985. In July 1986, Mr. Feltz sought relief from the stay so that he could foreclose on his tax sale certificates. This Court denied relief.

Equitable filed this adversary proceeding requesting the Court to establish the priority of the various claimants asserting liens on debtor's real estate. Prior to the hearing, the parties stipulated to the relative priority of Equitable, FmHA and Adams, but the parties do not agree as to Mr. Feltz and Keith County's position.

## Discussion

Equitable and Adams contend that the automatic stay prevents Keith County from either assessing, levying, or perfecting a tax lien post petition. Keith County and Mr. Feltz respond by pointing both to 11 U.S.C. § 362(b)(3), which excepts from the stay acts of perfection exempt from the trustee's avoiding power pursuant to 11 U.S.C. § 546(b), and to Nebraska law which provides that the perfection of a real estate tax lien is a function of the passage of time; thus, no "act" occurs. Further, they argue, Nebraska law provides that, regardless of the perfection date of a real estate tax lien, it takes first priority over all other liens. Additionally, because at the hearing denying Mr. Feltz's motion for relief the Court stated that Mr. Feltz's lien had first priority, Equitable and Adams are estopped from claiming now that Keith County does not have first priority.

An alternate argument posed by Keith County is that the levying and assessing of the real estate taxes should be exempted under Section 362(b)(4). This subsection excepts from the stay imposed by Section 362(a)(1) the "commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4) (1987).

The relevant Nebraska statutes authorizing counties to assess, levy and perfect property tax liens are contained in Neb. Rev.Stat., Chapter 77, *Revenue and Taxation.* Except for the question before the Court as to whether Keith County violated the provisions of Section 362, none of the parties is challenging the correctness of the County's taxing and notice procedures. However, establishing the effective date of each procedure—assessment, levy, perfection—in relation to the petition date is essential to resolving the priority of each tax lien claimed by the County, some of which have been assigned to Mr. Feltz.

Section 77–1301 of Neb.Rev.Stat. provides that "[a]ll real and personal property in this state subject to taxation shall be *assessed* as of January 1 at 12:01 a.m. which assessment shall be used as a basis of taxation until the next regular assessment." Neb.Rev.Stat. § 77–1301(1) (Reissue 1986) (emphasis added). Prior to January 1, 1985, this section read: "All real and personal property in this state subject to taxation shall be *valued* as of January 1 at 12:01 a.m. of 1981 and every odd-numbered year thereafter, which valuation shall be used as a basis of assessment and taxation until the next regular valuation." Neb. Rev.Stat. § 77–1301(1) (Reissue 1981) (emphasis added). Therefore, according to the Statute applicable prior to 1985, the assessment or valuation must have occurred, prepetition, on the odd-numbered years—January 1, 1981, and January 1, 1983. Because debtor filed its bankruptcy petition in February 1983, the remainder of the assessments occurred post petition.

Section 77–1601 outlines the authority delegated to counties to levy taxes: "[T]he county board of equalization shall each year, on or before September 15, levy the necessary taxes for the current year."[1] Neb.Rev.Stat. § 77–1601 (Reissue 1986). Levies thus occurred on debtor's real estate in September 1981 and September 1982 prepetition. The remainder of the levies took place post petition.

The final Nebraska statute necessary to the decision is Section 77–203 which authorizes real estate tax liens. It reads: "All general real property taxes levied for any county, city, village or other political subdivision therein, shall be due and payable on December 31 next following the date of levy thereof, and commencing on that date shall be a first lien on the real estate taxed until paid or extinguished as provided by law." Neb.Rev.Stat. § 77–203 (Reissue 1986). Therefore, two liens were in place prepetition, the first effective December 31, 1981, and the second, December 31, 1982; the remainder occurred post petition.

In summary, setting aside the question of the validity of any post petition transac-

---

1. "The county board shall constitute the county board of equalization." Neb.Rev.Stat. § 77–1501 (Reissue 1986). The county board includes "both county commissioners and supervisors, as the case may be." Neb.Rev.Stat. § 77–108 (Reissue 1986).

tions by Keith County, the tax liens claimed can be divided into four categories:

1. 1981 and 1982 tax years: the assessment, levy and lien perfection occurred prepetition;

2. 1983 tax year: the assessment occurred prepetition and the levy and lien perfection post petition;

3. 1984–87 tax years: all assessments, levies and liens' perfection took place post petition;

4. 1988 tax year: only the assessment has occurred to date.

■ As to Category 1, the Court finds that the liens are enforceable and properly perfected. Accordingly, these liens have first priority. Neb.Rev.Stat. 77–203 (Reissue 1986). Turning to the second category, because both the 1983 levy and lien perfection occurred post petition, the Court must examine Keith County's arguments that these functions are excepted from the automatic stay imposed by Section 362.

■ First, the County argues, notwithstanding the stay imposed by Section 362(a), Section 362(b)(3) allows the trustee "to *perfect* an interest in property to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b)." 11 U.S.C. § 362(b)(3) (1987) (emphasis added). However, even though this section excepts the "act" of perfection from the stay, it cannot be read to exclude any other "act" from the stay's reach. Thus, the County may not rely on this exception for either its post-petition assessment or levying functions. *In re New England Carpet Co., Inc.,* 26 B.R. 934, 939 (Bankr.D.Vt.1983).

In *New England Carpet,* the City of Winooski asserted a tax lien post petition, claiming priority over other security holders. The relevant Vermont statute, similar to Nebraska's, authorized the tax lien to relate back in time so as to have "priority in law over any other lien having priority in time." *Id.* at 939. The court found that the "creditor's underlying interest must be created *prior* to the petition, and that the interest need only be perfected after the petition date, so as to be excepted from the automatic stay." *Id.* (emphasis added).

*See also In Re Carlisle Court, Inc.,* 36 B.R. 209 (Bankr.D.C.1983) (holding that "post-petition real estate taxes assessed after commencement of the case ... are not entitled to lien status based on the broad application of the automatic stay under 11 U.S.C. § 362(a)(4)"). *Id.* at 219.

If Keith County's levy as well as its assessment had occurred prepetition, the County may have succeeded in its argument that Section 362(b)(3) permits post-petition perfection subject to Section 546(b). But Keith County's underlying interest, the 1983 levy, was created in September 1983 *after* the commencement of the case in February 1983. The tax levy is not the act which perfects an interest in debtor's property; thus Section 362(a) stays the levy. The exception allowed in Section 362(b)(3) cannot apply.

This same reasoning also stays the third and fourth categories. All of the County's actions—assessment, levy and perfection—occurred post petition. As discussed above, Section 362(b)(3) and Section 546(b) permit post-petition perfection solely. Assessing and levying are "acts" which are distinct from perfection.

The Court finds *Maryland National Bank v. Mayor & City Council of Baltimore,* 723 F.2d 1138 (4th Cir.1983), inapposite to the present case. In *Maryland National Bank,* the Fourth Circuit held that a bankruptcy trustee could not avoid the post-petition imposition of a city real estate tax lien on proceeds from a foreclosure sale of a corporation's property. The Court relied on a Maryland statute which required that the seller of the corporate property pay first all state taxes due and payable. The Court reasoned that the statute created a right that was immediately perfected even though another interest in the property may exist prior to both the foreclosure and the sale.

In *Maryland National Bank,* unlike the instant case, the automatic stay had been lifted prior to the foreclosure sale. Consequently, the issue of whether the City of Baltimore could assess or levy its real es-

tate taxes post petition despite the stay was not reached by the Fourth Circuit.

■ Therefore, Keith County's post-petition assessment and levy of real estate taxes on debtor's property are stayed unless the County succeeds in its second argument that tax collecting duties are essential to the public welfare and safety and that these duties are exempt from the stay pursuant to Section 362(b)(4), p. 2–3, *supra*.[2]

Section 362(b)(4) is "intended to be given a narrow construction ... and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.". P.L. 95–598, 1978 Code Cong. & Admin.News 5787, 6444–45, 6513 (Statements of Rep. Edwards & Sen. DeConcini) (emphasis added). From this legislative passage has been generated what courts call the "pecuniary purpose" test. *In re Herr*, 28 B.R. 465 (Bankr.D.Me.1983). "State and local governmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws. When they seek to do so for a pecuniary purpose, they are automatically stayed, notwithstanding the exception found at 11 U.S.C. § 362(b)(4)." *In re Thomassen*, 15 Bankr. 907, 909 (Bankr. 9th Cir.1981).

The court in *In re Charter First Mortgage, Inc.*, 42 B.R. 380, (Bankr.D.Or.1984), described the pecuniary purpose test:

In reviewing the cases, it is clear to this court that in applying the pecuniary purpose test, it must look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate.

*Id.* at 382. Keith County's assessment and levying of real estate taxes are purely pecuniary acts and intended to enable it to obtain funds. Although the funds will be used for various public purposes, the initial

and primary purpose of assessment and levy is the collection of money, in this case, from debtor's estate. If the County were successful in claiming the Section 362(b)(4) exception, the County gains an economic advantage over the claimants "in relation to the debtor's estate." *Id.*

A second test which has been developed by the courts to ascertain whether the Section 362(b)(4) exception applies to a governmental unit's actions is the "public policy" test. *In re Wellham*, 53 B.R. 195 (Bankr. M.D.Tenn.1985). This test requires that "the courts examine the action in question to determine whether a governmental unit is engaging in an action which affects the immediate parties to the action or whether it concerns a wider group subject to the authority of the governmental action." *Id.* at 197. In other words,

"Where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay."

P.L. 95–598, 1978 Code Code & Admin. News, 5787, 5838, 6299.

In this case, Equitable is requesting an adjudication of the rights of the County vis-a-vis the other creditors of the estate. No other parties are affected. The County's claim will not be eliminated, but rather it will be assigned a priority in relation to the other claims.

After reviewing the legislative history and the decisional law surrounding Section 362(b)(4), the Court finds that the County's real estate tax assessments and levies are pecuniary actions and not acts enforcing Keith County's police or regulatory power. Therefore, they are not excepted from the stay. *See also Matter of Commonwealth Cos., Inc.*, 80 B.R. 162 (Bankr.D.Neb.1987).

Moreover, attributing a narrow interpretation to Section 362(b)(4) is reasonable in

2. Keith County does not appear to argue that the automatic stay does not apply to it, and the law is well settled in that regard. Section 362 is "applicable to all entities." "Entity" is defined in Section 101(14) to include "person, estate, trust, governmental unit, and United States Trustee." 11 U.S.C. § 101(14) (1987).

context with other sections of the Bankruptcy Code addressing tax claims. For example, Section 503 designates "any tax incurred by the estate," after the commencement of the case, as an administrative expense. Administrative expenses receive first priority in payment after prepetition secured claims. 11 U.S.C. § 507(a)(1) (1987). The Code's inclusion of "taxes" as an administrative expense in Section 503 and the specific reference to "property taxes" assessed prior to the commencement of the case in Section 507(a)(7)(B) would be superfluous if the County could acquire a tax lien post petition despite the automatic stay.

 Mr. Feltz's claim of collateral estoppel or res judicata is overruled. *See* P.L. 95–598, 1978 U.S.Code Cong. & Admin. News 5787, 5841 ("[relief] hearing will not be the appropriate time ... to bring in ... counterclaims"); *8 Collier on Bankruptcy* ¶ 4001.03[2] (15th ed. 1988) ("The shortened timetable for stay litigation is not conducive to full and proper litigation of other claims."). However, the Court finds that Mr. Feltz was a purchaser of the tax certificates without notice and that Mr. Feltz relied on the Court's statements giving the tax liens first priority. His right to payment is derived from Keith County's status.

In conclusion, the 1981 and 1982 tax liens are properly perfected, and Nebraska law affords them first priority over all other claimants. Section 362(a) stays the 1983 through 1987 assessments, levies and liens as well as the 1988 assessment. Keith County's claim for its 1983 through 1988 real estate taxes shall be treated as provided in Sections 501, 503 and 507. Because Keith County's assessment and levies for 1983 through 1985 are stayed, the County had no tax certificates to sell.

Keith County shall refund to Mr. Feltz his purchase price for the tax certificates and the taxes he paid to protect his interest. The County shall pay interest at the statutory rate. A supplemental judgment will be entered for the total amount to be paid once the information is provided to the Court in affidavit form.

A separate journal entry will be entered this date.