**In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.**

**Bankruptcy Nos. 86 B 11270 (BRL) through 86 B 11334 (BRL), 86 B 11402 (BRL) and 86 B 11464 (BRL).**

United States Bankruptcy Court, S.D. New York.

Sept. 29, 1988.

Levin & Weintraub, Crames & Edelman, New York City by Marc Abrams, Steven E. Fox, and Davis Polk & Wardwell, New York City, Verner, Lipfert, Bernhard, McPherson and Hand, Chartered, Washington, D.C. by Stuart F. Pierson, for debtors.

Stroock & Stroock & Lavan, New York City by Arlene Krieger, for creditors committee.

Rudolph W. Giuliani, U.S. Atty., New York City by Susan P. Johnston, U.S. Dept. of Justice, Trial Atty., Civil Div., Commercial Litigation Branch, Washington, D.C. by Marlene F. Gibbons, for U.S. and the Secretary of Educ., Dept. of Educ.

## ABSTRACT OF RULING OF SEPTEMBER 29, 1988 RELATING TO SECTIONS 362(b)(4) AND (b)(5) (AUTOMATIC STAY EXCEPTION)

BURTON R. LIFLAND, Chief Judge.

### ISSUES

1) Whether prosecution under the False Claims Act, 31 U.S.C. §§ 3729–33, is included in the exception from the automatic stay provided in §§ 362(b)(4) and (b)(5) of the Code.

2) Whether there is cause sufficient to allow relief from the automatic stay under § 362(d) of the Code.

3) Whether there is justification for staying the Debtors' objection to the claims of the Secretary of Education pending the Fifth Circuit's decision.

### FACTS

On July 17, 1986, and thereafter, The LTV Corporation ("LTV") and LTV Aerospace and Defense Company ("LTV Aerospace"), and sixty-five affiliated companies filed petitions for reorganization under Chapter 11 of the Bankruptcy Code (the "Code") and have continued in the management and possession of their businesses and properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Code.

LTV Educational Systems, Inc. ("ESI") was established as a wholly owned subsidiary of LTV Aerospace. ESI operated 43 trade and vocational schools throughout the United States. ESI relied on the Federal Insured Student Loan Program ("FISL") to finance the education of lower income students.

In 1977, ESI commenced litigation in the Court of Claims in Texas to obtain payment of federal insured student loan insurance which had been suspended by the Office of Education (the "Government") as a result of allegations of fraud against ESI. That action was voluntarily dismissed after related criminal proceedings against LTV, Vought (now LTV Aerospace) and ESI were concluded. The companies had been indicted on July 31, 1978 for fraud and conspiracy to defraud the government through their abuses of the FISL Program. ESI pled *nolo contendere* to fifty counts of a fifty-four count indictment. LTV and Vought pled *nolo contendere* to the main conspiracy count of the indictment. The three companies paid a $500,000 fine.

ESI then recommenced a civil action in the Texas District Court entitled *LTV Education Systems, Inc. v. Bennett*, No. 3–80–0125R (N.D.Tex.). The Government denied that ESI was entitled to the insurance payments, and counterclaimed against ESI, LTV and LTV Aerospace for damages and equitable relief resulting from the alleged fraudulent practices by ESI, LTV and LTV Aerospace in connection with over 14,000 loans made under the FISL Program. Furthermore, the Government alleged in its counterclaim that in the operation of the vocational schools, the funds, obligations, debts and operational responsibilities of ESI were merged under the dominion and control of LTV and LTV Aerospace. The Government counterclaim states causes of action under both the False Claims Act and at common law.

On December 18, 1985, the Government filed a motion for partial summary judgment against ESI in the Texas District Court on the common law claims for unjust enrichment and restitution for ESI's violations of the "points and premiums" regulation (*see*, 45 C.F.R. 177.(6)(e)). ESI responded to the Government motion for partial summary judgment, and cross-moved to dismiss the counterclaim and for summary judgment in its own favor. However, before Judge Buchmeyer for the District Court issued his decision, Debtors filed their petitions for reorganization under Chapter 11 of the Code, thus staying the Texas Court Action.

In September 1986, this Court approved a stipulation modifying the automatic stay to allow the pending cross-motions and any appeal to be resolved by the Texas courts. The stipulation did not lift the stay as to any of the Government claims against LTV or LTV Aerospace, as to any of its claims under the False Claims Act, or as to its claims under the regulatory provisions not addressed in the Government's motion for partial summary judgment.

In November 1986, Judge Buchmeyer ruled in favor of the Government against ESI and dismissed ESI's complaint against the Government. In granting the Government's partial summary judgment motion, Judge Buchmeyer held that ESI was liable under two common law theories for violation of one program regulation. However, Judge Buchmeyer left undecided all of the Government's claims against LTV and LTV Aerospace, all claims under the False Claims Act, and all claims under the three other program rules. In August 1987, the Texas Court awarded damages to the Government in the amount of $20,908,-219.81. The Texas Court certified the decision for an interlocutory appeal and the appeal was heard by the United States Court of Appeals for the Fifth Circuit on July 6, 1988. The matter remains *sub judice.*

On November 25, 1987, the Secretary of Education filed timely proofs of claim in this bankruptcy proceeding against LTV, LTV Aerospace and ESI. The proofs of claim were amended in December 1987 to the amount of $170,909,253.49. On July 1, 1988, LTV and LTV Aerospace filed a notice of motion objecting to the claims asserted against them by the Secretary of

Education. In response, the Government filed this motion.

### RELIEF REQUESTED

The Government moves, in the alternative: (1) that this Court declare that an exception from the automatic stay under §§ 362(b)(4) and (b)(5) is applicable in this instance; or (2) for relief from the automatic stay for cause under § 362(d); or (3) for a stay of Debtors' objection to the Claims of the Secretary of Education until the Fifth Circuit renders its decision on the Debtors' appeal of the partial summary judgment.

### DISCUSSION

1) *Section 362(b) Exemption From the Automatic Stay.*

■ Sections 362(b)(4) and (b)(5) of the Code provides an exemption from the § 362(a) automatic stay provision in an action by the Government to enforce its police or regulatory powers.

> The filing of a petition under section 301, 302 or 303 of this title, ... does not operate as a stay—
>
> > (4) ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.
> >
> > (5) ... of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

In determining whether a governmental action is excepted from the stay pursuant to § 362(b), courts have developed two tests—the pecuniary purpose test and the public policy test.

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtors property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted

from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir.1988); *see also, In re Herr*, 28 B.R. 465, 468 (Bankr.D.Me.1983); *In re Wellham*, 53 B.R. 195, 197 (Bankr.M.D.Tenn. 1985).

■ In applying these tests, the court must examine the particular action in question "to determine whether a governmental unit is engaging in an action which affects the immediate parties to the action or whether it concerns a wider group subject to the authority of the governmental unit." *In re Wellham*, 53 B.R. at 197; *see, In re Dan Hixson Chevrolet Company*, 12 B.R. 917, 920 (Bankr.N.D.Tx.1981). Thus, this Court agrees with the Debtors' position that the issue here is not whether the Federal Claims Act is intended to serve some public policy, but rather whether the Government's Federal Claims Act claims in this case meet the tests for excepting governmental police and regulatory actions from the automatic stay. In order to make such a determination, this Court must examine the rules of construction applicable to these tests and the legislative history of § 362(b) of the Code.

Both the Debtors and the Government rely on the legislative history of § 362(b) in interpreting its intent. The Government relies on the following provision as evidencing a legislative intent to allow relief from the automatic stay in governmental police and regulatory actions which merely seek to ascertain a debtor's liability and to fix the amount of a penalty.

> Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud ... laws, *or attempting to fix damages for violation of such a law*, the action or proceeding is not stayed under automatic stay.

H.Rep. 95–598 at 343, 1978 U.S.Code Cong. & Administrative News 5787, 6299. (emphasis added); *see also, In re Common-*

*wealth Cos., Inc.,* 80 B.R. 162, 164 (Bankr. D.Neb.1987); *In re Herr,* 28 B.R. 465 (Bankr.D.Me.1983).

However, in this situation, the Debtors' reliance on the following passage which demonstrates that Congress intended that courts give § 362(b)'s exceptions a narrow construction, is more compelling:

> This section is intended to be given a narrow construction in order to permit governmental units to pursue actions *to protect the public health and safety* and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. 32,395 (1978) (Statement of Rep. Edwards); 124 Cong.Rec. 33,995 (1978) (identical Statement of Sen. Deconcini) (emphasis added); *see also, In re Commonwealth Cos., Inc., supra.*

Additionally, this Court is in agreement with the decision *In re Commonwealth Cos. Inc., supra,* in finding the Government's arguments unpersuasive. The facts and circumstances in this case are identical to that of the *Commonwealth Cos.,* decision. In *Commonwealth Cos.,* the Government was seeking an exception from the automatic stay under § 362(b)(4) in order to join the debtors in a civil fraud action for violations of the False Claims Act. The court, in reliance on the legislative history, found that:

> the type of governmental action Congress anticipated to be excepted from the stay is a circumstance which requires injunctive relief, and the type of damages intended to be permitted are those accompanying or following an injunctive action.

*Id.* at 164.

Moreover, the Government, in both this case and in the *Commonwealth Cos.* case, mistakenly relies on a list of cases which are inapposite [1]. In those cases, although the Government's action included a remedy other than injunctive relief which was deemed to fall within the exception, the cases cited appear to involve situations where the Government's enforcement of the regulation would protect either the public health or safety. The circumstances involved in the instant situation and the *Commonwealth Cos.* case, however, do not fall within the public health and safety category. In fact, the court in *Commonwealth Cos.* stated that the False Claim Act action could not:

> [U]nder either the pecuniary purpose test or the public policy test, properly be characterized as an enforcement of police or regulatory powers but is merely an action for damages. While the government has articulated a public policy reason for continuing the action, the court is not convinced that the reason propounded is the government's primary motivation.

*Id.* at 165 (quoting *In re Wellham,* 53 B.R. at 198). In addition, the *Commonwealth Cos.,* court found that Congress intended a pecuniary purpose for the False Claim Act and as evidence to that intent, "(t)he preface to the Act does not include a public or safety purpose." *Id.* at 165. Indeed, in the case before this Court today, the Government makes neither a public safety nor a public health argument.

Furthermore, this Court finds the Government's contention that the public policy of deterrence would be furthered by its action in this case lacks merit. These alleged violations occurred over ten years ago and ESI is no longer in business. Thus, this case can be distinguished from the case of *In re Herr,* 28 B.R. 465 (Bankr. D.Me.1983), in which the assessment of penalties for making false unemployment claims was found to be exempted from the stay under § 362(b)(4). The *Herr* court determined that the "Bureau [was] acting

---

1. *See, i.e., CPI Crude, Inc. v. U.S. Dep't of Energy,* 77 B.R. 320 (D.D.C.1987); *Brock v. Rusco Indus. Inc.,* 842 F.2d 270, 273–74 (11th Cir.1988); *In re Tauscher,* 7 B.R. 918 (Bankr.E.D.Wis.1981); *EEOC v. McLean Trucking Co.,* 834 F.2d 398, 402–3 (4th Cir.1987); *EEOC v. Rath Packing Co.,* 787 F.2d 318, 324–25 (8th Cir.1986); *Penn Terra v. Dep't of Environmental Resources,* 733 F.2d 267, 274 (3d Cir.1984); *United States v. Energy Int'l, Inc.,* 19 B.R. 1020 (S.D.Ohio 1981); *United States v. Nicolet, Inc.,* 81 B.R. 310, 311–12 (E.D. Pa.1988); *United States v. Mattiace Indus. Inc.,* 73 B.R. 816, 819 (E.D.N.Y.1987).

to 'stop violation of fraud ... laws' and 'fix damage for violation of such a law.'" *Id.* at 469. With respect to matters before this Court today, the Government's action is only to fix damages. Indeed, with respect to the extent of a public policy effect to be realized regarding ESI's activities, that was accomplished in 1978 with the conclusion of the Government's criminal charges. Therefore, allowing the Government to pursue this action in Texas would at best have a marginal effect on the deterrence of other entities.

Finally, this Court finds the Government's argument unpersuasive that *Wellham* and *Commonwealth Cos.*, *supra*, were wrongly decided "(b)ecause those courts ignored or misinterpreted the legislative history and the clear language of the statute". (*See,* Government's Memorandum at 18 n. 9.) These two decisions give a clear and thorough analysis of the legislative history and legal doctrine involved and directly parallels the case at hand.

In support of its assertions that its False Claims Act claims are exempt from the automatic stay, the Government refers us to three cases which it appends as exhibits: *In re Universal Engineering & Supply, Inc.*, No. 486–00315–LC–11 (Bankr.W.D.La. May 28, 1986), *United States v. Welk*, 86–671–A (E.D.Va. November 13, 1986) and *In re Fountain–Lowrey Enterprises, Inc.*, Case No. 85–00897 (Bankr.S.D.Ala. August 13, 1987). These exhibits are particularly unhelpful in support of the Government's argument. *Universal* is simply an order based upon rationale or factors not contained in the order. *Welk* is a conclusory memo decision based partly on default and is without analysis or discussion. *Fountain–Lowrey* is merely an order which contains no extensive analysis and notes that the court found notions of judicial economy, based upon the facts before it, to be a compelling reason for preventing the litigation from going forward in another court. For reasons this Court finds persuasive in the Debtors' submissions on the facts as to the dubiousness of judicial economy to be served by resuming in Texas, and as I will discuss hereinafter, I do not find the *Fountain–Lowrey* case persuasive or nondistinguishable given the facts and circumstances in this case. Therefore, in light of the legislative history and this Court's agreement with the analysis of *Wellham* and *Commonwealth Cos.* as applied to these facts, this Court concludes that the Government's cause of action under the False Claims Act is not an exception under § 362(b) of the Code. The Government's motion in this regard is therefore denied.

2) *Section 362(d) Lifting Of The Automatic Stay.*

■ The Government requests, in the alternative, that this Court modify the stay in this case to allow it to pursue the entire action in Texas. This Court is not persuaded by the Government's argument that adjudicating the entire case here would most likely be more costly than if the case is resolved in Texas. Nor does this Court find that nearly all of the evidence necessary to be presented in this litigation has already been submitted to Judge Buchmeyer as part of the record of the motion for partial summary judgment.

The Government's counterclaim in the ESI case presents nine counts which include both common law claims and claims under the False Claims Act. The Government seeks to recover against LTV, LTV Aerospace and ESI for violations of four different regulations governing the Federal Insured Student Loan Program in the early 1970's. Judge Buchmeyer granted partial summary judgment against ESI under two common law theories for violation of one program regulation. However, he made no findings regarding the claims against LTV and LTV Aerospace, the claims under the False Claims Act, the claims under the three other program rules, or the derivative liability action against LTV and LTV Aerospace. Thus, the claims against LTV and LTV Aerospace and the derivative liability action must be decided *de novo*. Therefore, the Government's argument that failure to modify the stay will result in dual litigation on matters already before the Texas Court is without merit.

Furthermore, this Court finds no evidence that the Government would be irreparably harmed if the automatic stay is not lifted. *See, In re Commonwealth Cos. Inc.*, 80 B.R. at 166. This action can be

resolved within this Court under expedited procedures in the context of this reorganization. In fact, the Government's claims against the Debtors, if successful, would have a substantial effect on the Debtors' plan [or plans] of reorganization. The Government has filed proofs of claim against each one of the three companies in the amount of $170,909,253.49. Thus, if the Government is successful in these actions it would have a total claim against these Debtors in excess of *a half billion dollars.* These claims must be dealt with within the parameters of these bankruptcy proceedings because of their potential impact on the other creditors, parties in interest and to the entire reorganization process which is well along.

Thus, the Government has not met the criterion in § 362(d) of the Code which allows the automatic stay to be lifted "for cause". Consequently, the Government's motion to lift the automatic stay under § 362(d) of the Code as to those matters not covered by the prior lift stay stipulation is hereby denied.

3) *Whether the Debtor's Objection Should Be Stayed.*

■ The Government also requests, in the alternative, that this Court should issue an order staying the Debtors' objection to the claims of the Secretary of Education against LTV and LTV Aerospace pending the Fifth Circuit's decision on Debtors' appeal from the Texas Court's partial summary judgment decision. This Court finds no justification for staying the litigation against LTV and LTV Aerospace awaiting the Fifth Circuit's opinion on the case involving solely ESI. As stated previously, the evidence against LTV and LTV Aerospace would have to be considered *de novo.* Thus the ramifications of the Fifth Circuits opinion would have little consequence as to these two other companies. The Government's request for a stay of these proceedings is likewise denied.

It is so ORDERED.