**UNITED STATES of America, Plaintiff,**

v.

**Victor SEITLES and Westbrook Lithographers, Inc., Defendants.**

**No. 88 Civ. 0224 (SWK).**

United States District Court, S.D. New York.

Sept. 11, 1989.

Benito Romano, U.S. Atty. for the Southern District of New York, New York City, Ping C. Moy, Sp. Asst. U.S. Atty., for plaintiff.

Shaw, Licitra, Esernio & Schwartz, P.C., Garden City, N.Y., William V. Alesi, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

On January 12, 1988, the United States (hereinafter "government") commenced this action against defendant Westbrook and its president and sole remaining executive, defendant Seitles, under the False Claims Act, 31 U.S.C. § 3729 *et seq.* The government seeks treble damages and civil penalties against defendants, jointly and severally, in the amount of $1,666,769.00, comprising $278,923.00 in actual damages trebled ($836,769.00) plus civil penalties of up to $830,000.00.

Defendant Westbrook has moved the Court pursuant to 11 U.S.C. § 362(a) to stay this action pending bankruptcy pro-

ceedings; defendant Seitles has moved the Court pursuant to 11 U.S.C. § 105 to stay the remaining case against him in order to allow the Bankruptcy Court to adjudicate the government's claims against defendant Westbrook.

## BACKGROUND

This claim arises under the same set of facts and circumstances that led to the conviction by guilty plea of defendant Seitles for conspiring with and bribing an officer of the United States Government Printing Office. In that criminal action, *United States v. Victor Seitles*, S 86 Cr. 1007(PKL), the government sought restitution in the amount of approximately $278,-000.00, the figure alleged to be the amount of actual damages in the present case. In sentencing defendant Seitles in the criminal matter, Judge Peter K. Leisure heard argument by both government and defendant as to the actual amount of damages suffered. Judge Leisure ordered defendant Seitles to pay $44,000.00 restitution to the Government, representing Seitles' approximate profit realized from the illegally-obtained printing jobs.

On January 20, 1989, Defendant Westbrook filed a petition for reorganization in the United States Bankruptcy Court for the Eastern District of New York (Case No. 819 9–206–353) pursuant to the Bankruptcy Code, Chapter 11 of the United States Code. Defendants now move this Court to stay Plaintiff's False Claims Act claim against Westbrook in light of the pending bankruptcy proceedings. They argue that, as to Westbrook, this action is subject to the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362(a)) and that, as to Seitles, this action should be stayed in the exercise of this Court's discretion. The government argues, on the other hand, that the automatic stay does not apply to claims brought by the government under the False Claims Act, and furthermore, that

there is no good reason to grant a stay to non-debtor codefendant Seitles.

## DISCUSSION

### I. AUTOMATIC STAY PROVISION

The purpose of a voluntary petition for Bankruptcy under Chapter 11 is to enable debtors to obtain the court's protection against their creditors.[1] To that end, the federal reorganization provisions call for an automatic stay of most judicial proceedings against debtors. 11 U.S.C. § 362(a). Section 362(a)(1), entitled "Automatic Stay," provides:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [voluntary cases, joint cases, and involuntary cases of bankruptcy, respectively], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)) operates as a stay, applicable to all entities, of— (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

One purpose of the automatic stay is to allow debtors a "breathing spell" from their creditors. *Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64 (2nd Cir.1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5840–41). Another purpose of § 362(a)(1) is to protect creditors by providing for the orderly resolution of their claims. *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340

---

1. Section 301 of the Bankruptcy Code provides: A voluntary case under a chapter of this title [11 USCS §§ 101 *et seq.*] is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.
11 U.S.C. § 301.

(1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6296–97).

Subsection (b) provides for a few exceptions to the Automatic Stay. It reads in part:

(b) the filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)), does not operate as a stay—

\* \* \* \* \* \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

These exceptions function to "permit governmental units to pursue actions to protect the public health and safety," even when the target of such enforcement actions is in bankruptcy. *In re Greenwald*, 34 B.R. 954, 956–7 (Bankr.S.D.N.Y.1983) (quoting 124 Cong. Rec. H 11092 (daily ed., Sept. 28, 1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6436, 6444–45). In carving out these exceptions, Congress intended to combat the risk that defendants could frustrate "necessary governmental functions" by seeking refuge in bankruptcy court. *United States v. Nicolet*, 857 F.2d 202, 207 (3rd Cir.1988).

The question that arises before this Court is whether the present governmental action under the False Claims Act is a "necessary governmental function" geared towards the "protect[ion of] the public health and safety," or instead, whether this claim is a proprietary governmental function aimed at the protection of pecuniary interests. The government asserts that the "public policy and deterrent" purposes of this action are to "recover damages resulting from [defendants'] fraud upon the government and bribery and corruption of a public official, and to deter other similar conduct." Plaintiff's brief at 20–21. Debtor-defendant alleges that "Plaintiff is attempting to circumvent the automatic stay in order to protect its pecuniary interest in the property of the debtor." Defendant's brief at 7.

Courts examining the legislative history of § 362 usually construe the police and regulatory powers exception narrowly, *see, e.g., In re Wellham*, 53 B.R. 195, 197 (Bankr.M.D.Tenn.1985), citing *TXIA Holdings Corp. v. National Mediation Bd. (In re Continental Airlines Corp.)*, 40 B.R. 299 (Bankr.S.D.Tx.1984); *Heckler Land Development Corp. v. Montgomery*, 15 B.R. 856 (Bankr.E.D.Pa.1981). False Claims Act claims are usually thought to be subject to the automatic stay provisions of § 362(a)(1). Most recently, in *In the Matter of Chateaugay, et al.*, No. 86 B 11270 (Bankr.S.D.N.Y., Sept. 29, 1988), the Court approvingly quotes the findings of judges in two other jurisdictions to the effect that the False Claims Act may not "properly be characterized as an enforcement of police or regulatory powers but is merely an action for damages." *Id.*, Slip. Op. at 51 (quoting *In re Commonwealth Cos., Inc., et al.*, 80 B.R. 162, 165 (D.Neb. 1989) at 51 (quoting *In re Wellham*, 53 B.R. 195, 198)).

The *Chateaugay* Court followed the two tests laid out in *Commonwealth* and *Wellham*, the "pecuniary purpose" test and the "public policy" test, to determine whether a government claim falls within the § 362(b)(4) exception to the automatic stay. The pecuniary purpose test examines

"whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay."

*Chateaugay* at 47 (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988)). The "public policy" test "distinguish[es] between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted

from the stay." *Id.* As a guide, the *Chateaugay* and *Wellham* courts recommend examining whether the government in the action in question is "engaging in an action which affects the immediate parties to the action or whether it concerns a wider group subject to the authority of the governmental unit." *Chateaugay, supra,* Slip Op. at 48 (citing *Wellham, supra,* 53 B.R. at 197.)

The Pecuniary Purpose Test

■ *Wellham* involved a False Claims Act suit against a supplier of substandard metals to an agency of the United States Department of Defense. In that case, by the time the False Claims Act claim was filed, the debtor had already reached an agreement with the U.S. Attorney and was no longer providing the government with metal supplies. 53 B.R. at 196. The *Wellham* court found that those facts did not satisfy the tests for excepting the automatic stay because the government's claim did not relate to a continuing threat to public safety. "The civil action ... does not purport to stop any continuing misconduct by the debtor, who is no longer providing material to the government." 53 B.R. at 198.

By contrast, in *In re Commerce Oil Co.,* 847 F.2d 291 (6th Cir.1988) the Tennessee Commissioner of Health and Environment successfully obtained an exception to the automatic stay under the police power exception. In that case, the State sought an injunction against defendant company for illegally discharging brine into a creek and sought damages and civil penalties against the company. The Sixth Circuit found that the primary purpose of the State's suit was the protection of public health and safety, and the proprietary or pecuniary reward in assessing penalties was only of secondary importance. 847 F.2d at 296.

According to these precedents, the presence or absence of continuing harm as well as a threat to public health is relevant in determining the applicability of § 362(b)(4). Similarly to *Wellham* and in contrast to *Commerce Oil,* the present case involves no threat to public health or safety. The fraudulently obtained printing contracts posed only a monetary, not a safety, threat to the government. Furthermore, as in *Wellham,* defendants no longer supplies printing services to the United States Government Printing Office and in fact Seitles has already been convicted and sentenced in connection with the underlying fraud. This civil action thus does not serve to stop any continuing misconduct by the debtor. Because the harm caused by Seitles and Westbrook is neither continuing nor health-related, the government may not obtain an exception to the automatic stay in this case under the pecuniary interest test.

The Public Policy Test

Neither does the "public policy" test indicate that this suit should be excepted from the automatic stay. The government contends that there are public policy reasons to pursue this False Claims Act suit, namely, reimbursement of damages incurred by the government because of defendants' actions and deterrence of other similar conduct by defendants and others. Under similar facts, the *Chateaugay, Commonwealth Cos.,* and *Wellham* courts disposed of this issue without hesitation. "While the government has articulated a public policy reason for continuing the action, the Court is not convinced that the reason propounded is the government's primary motivation." *Chateaugay, supra,* Slip Op. at 6 (quoting *Commonwealth Cos., supra,* 80 B.R. at 165, and *Wellham, supra,* 53 B.R. at 198.) [2]

Several factors in the present case point to the same conclusion. As to reimbursement of loss, defendant Seitles has already been ordered by Judge Leisure in the related criminal matter to pay to the government restitution in the amount of $44,-000.00. As to the deterrent value of the government's present civil action, that purpose has been served to a significant degree by the criminal action in which defen-

---

**2.** The government urges this Court to abandon the teachings of *Wellham, Commonwealth Cos.,* and *Chateaugay,* because they misunderstand the legislative history and are against the weight of authority. This Court adheres to *Wellham,* *Commonwealth Cos.,* and *Chateaugay* as thoroughly researched and well-considered opinions that comport, to this Court's satisfaction, with the statutory language, legislative history and prior court decisions.

dant Seitles was sentenced to a suspended prison term, community service and restitution. Finally, it is noted that the amount that the government alleges in actual damages, $278,000.00, is approximately the same amount it sought, unsuccessfully, in Judge Leisure's courtroom. The similarity of those figures suggests that the government in this case is attempting to recover the damages that it could not obtain in the prior matter, a purely pecuniary endeavor which may be addressed after the orderly settlement of the bankrupt Westbrook estate.

The government cites three cases in which courts have ruled that False Claims Act suits come under the police and regulatory exception to the automatic stay provision: *In re Universal Engineering & Supply, Inc.*, 486–00315–LC–11 (Bankr.W.D. La., May 28, 1986); *United States of America v. Welk*, Civ. 86–671–A (E.D.Va., Nov. 13, 1986); and *In re Fountain–Lowery Enterprises, Inc.*, Case No. 85–00897 (Bankr.S.D.Ala., Aug. 13, 1987). None of these cases is persuasive or even particularly helpful. The first, *Universal Engineering*, is a one-and-one-half page order setting forth no reasons for its conclusions. *Welk* is an even shorter conclusory memo, based in part on default, and described by Judge Lifland in *Chateaugay* as "without any analysis or discussion." *Supra*, Slip Op. at 54. *Fountain–Lowrey* is based on notions of judicial economy that are absent here. Any discovery that has already been developed in the present suit can be presented to this court after the stay has been lifted.

Therefore, this Court grants defendant's motion and holds that the stay of 11 U.S.C. § 362(a) applies to the government's claim.

## II. STAY OF PROCEEDING AGAINST DEFENDANT SEITLES

■ Defendant Seitles has moved the court for a stay of these proceedings pursuant to 11 U.S.C. § 105 pending a final resolution of plaintiff's claims against Westbrook in Bankruptcy Court. The government contends that a stay is inappropriate as to Seitles.

The automatic stay provision of § 362(a) stays actions only against those who have filed for bankruptcy. It is well established that non-debtors, even non-debtor codefendants such as Seitles, are not entitled to § 362 relief. *See, e.g., In re Anje Jewelry Co., Inc.*, 47 B.R. 485 (Bankr.E.D.N.Y 1983) (citing *Matter of Johns–Manville Corporation*, 26 B.R. 405, 409 (Bankr.S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y.1984), *order rev'd in part*, 41 B.R. 926 (S.D.N.Y. 1984)).

Section 105(a) of the Bankruptcy Code states that

The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Section 105 enables this court, in the exercise of its equity powers, to stay proceedings not covered by the automatic stay provisions of 11 U.S.C. § 362(a). 2 Collier on Bankruptcy, ¶ 105.02 (15th ed.1983), *cited in Anje Jewelry, supra*, 47 B.R. at 486. However, non-debtor stays are not to be granted freely; Bankruptcy Judge Lifland cautions: "Section 105 does not have a life of its own and this extension may only be accomplished within the proper boundaries of Section 362." *Johns–Manville, supra*, 26 B.R. at 414–15, *quoted in Anje Jewelry, supra*, 47 B.R. at 486–87.

The primary considerations for determining when a non-debtor codefendant may properly be granted a stay under § 105 are: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *In re Anje Jewelry Co., Inc., supra*, 47 B.R. at 487 (citing *In re Vantage Petroleum Corp.*, 25 B.R. 471, 477 (Bankr.E.D.N.Y.1982) and *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (other citations omitted)).

One element of irreparable harm is "interference with the rehabilitative process," 2 Collier on Bankruptcy ¶ 362.05 (15th ed. 1982), *cited in Johns–Manville, supra*, 26

B.R. at 425; *see also Anje Jewelry Co., supra,* 47 B.R. at 487. This test is met when the action against the non-debtor co-defendant is so "inextricably interwoven" with the affairs of the debtor that it would "substantially hinder the debtor's reorganization effort." *Anje Jewelry, supra,* 47 B.R. at 487; *see also In re Ms. Kipps, Inc. and Kay Kipps, Ltd.,* 34 B.R. 91, 92 (Bankr.S.D.N.Y.1983).

In *Ms. Kipps,* the codefendant was the non-debtor president of two bankrupt companies which continued their operations as debtors in possession. The bankrupt companies were sued by a labor union for certain unpaid employee benefit contributions. The court extended the companies' § 362 stay to the debtor's principal pursuant to § 105. It found that "requiring him [the president] to maintain a defense in another forum will necessarily detract from his efforts to operate and rehabilitate the debtor corporations." *Id.* at 93. Similarly, in the present case, Seitles is the president and sole remaining executive officer of Westbrook. Seitles Affidavit at 2. He is responsible for overall management and supervision of the company, which operates as a debtor-in-possession. The government's action against him is "inextricably interwoven" with its claims against Westbrook such that defending himself against it would necessarily detract from his ability to continue Westbrook's printing operations. Therefore, a § 105 stay is necessary and appropriate to enable Seitles to devote his full attention to rehabilitating Westbrook.

The government urges that § 105 relief not be granted to Seitles. It cites *In re Anje Jewelry Co.* as an example of a case where the non-debtor president of a debtor corporation was denied a stay under the court's equitable powers. That case, however, is distinguishable on its facts. There, the president of Anje Jewelry allegedly signed a bad check issued by the company. The complexity of the action and the amount in dispute was considered "relatively insignificant" by the court.

Here, by contrast, the amount of damages actually suffered by the government remains hotly disputed: Seitles contends that he owes the government nothing beyond the $44,000.00 restitution set by Judge Leisure in the related criminal matter. Affidavit of Seitles at 3–4. The government is suing for an amount in excess of $1.6 million. Plaintiff's brief at 4. The competing figures arise from entirely different accounting methods advocated by each party. The difference between these two sums is so large, and the accounting methods proposed by the parties so different, as to raise complex issues, forcing defendant Seitles to expend significant time and energy in preparing for this litigation. This case is thus distinguishable case from the fairly simple dispute in *Anje Jewelry.*

The complexity of the issue of damages in this case also persuades the Court to find the presence of "sufficiently serious questions going to the merits" plus a weighty "balance of hardships" tipping towards defendant Seitles. Seitles claims to have a "minimal net worth" plus heavy responsibilities going towards guiding Westbrook through the reorganization process. Affidavit of Seitles at 4. The government alleges no hardships to be suffered by it in the event of a stay upon the action against Seitles. The government rightly maintains that many of the issues of fraud will not require much further investment of time because of Seitles' admissions in the criminal proceedings. Government's brief at 23. However, the major factual question, the amount of unrecovered damages suffered by the government, is a serious matter that cannot be easily disposed of. Therefore, the Court finds that the balance of hardships in this case tips decidedly in favor of granting defendant Seitles a stay of the government's proceedings against him in this matter.

Finally, it is most efficient for the claims against Seitles and Westbrook to be heard together, because the issues are identical as to each of the defendants. The government admits that "any effort Seitles will have to expend to defend himself personally will be essentially identical to that necessary to defend his company, Westbrook. Principles of judicial economy dictate that

**42**

all the claims against Westbrook and Seitles be settled in one proceeding." Government's brief at 22–23. Therefore, because this Court has determined that these proceedings are automatically stayed as against defendant Westbrook pursuant to 11 U.S.C. § 362, the interest of judicial economy is served by staying these proceedings as to defendant Seitles as well.

### CONCLUSION

For the reasons stated above, this Court grants defendant Westbrook's motion for a stay of this action under 11 U.S.C. § 362(a), and grants defendant Seitles' motion for a stay pursuant to 11 U.S.C. § 105.

This action is hereby placed on the suspense docket for the duration of the stay.

SO ORDERED.