In re COMMONWEALTH COMPANIES, INC. and Commonwealth Electric Co., Inc., Debtors.

UNITED STATES of America, Appellant,

v.

COMMONWEALTH COMPANIES, INC. and Commonwealth Electric Co., Inc., Appellees.

No. 89–1797NE.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided Sept. 6, 1990.

---

Richard A. Olderman, Washington, D.C., for appellant.

Robert F. Craig, Omaha, Neb., for appellees.

Before WOLLMAN and MAGILL, Circuit Judges, and WATERS,* District Judge.

* The HONORABLE H. FRANKLIN WATERS, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

MAGILL, Circuit Judge.

The United States (the government) appeals from the district court's judgment affirming the bankruptcy court's denial of the government's motion for exception from the Bankruptcy Code's automatic stay under 11 U.S.C. § 362(b)(4), or, in the alternative, relief from the stay for cause under § 362(d)(1). The government's motion sought a ruling that it could join the debtors, Commonwealth Companies, Inc. and its subsidiary, Commonwealth Electric Company, Inc., in a pending civil fraud action brought against officers of the debtor corporations and others under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733. We hold that § 362(b)(4) excepts the government's proposed FCA action against the debtors from the automatic stay up to and including the entry of a money judgment.[1] Accordingly, we reverse the judgment of the district court.

## I.

On August 10, 1987, the debtors filed a Chapter 11 bankruptcy petition in the District of Nebraska. Four days later, the government brought a civil fraud action under the FCA in federal court in Tennessee, alleging that the debtor corporations, three of their officers, and other parties had conspired to rig bids on an electrical construction subcontract for a waste water treatment plant in Tennessee. The government had paid seventy-five percent of the costs of the project through a grant awarded by the United States Environmental Protection Agency. The complaint stated that the bid-rigging conspiracy had caused the submission of false and inflated claims, resulting in actual damages to the government totaling approximately $778,000. For the alleged violations of the FCA, the government requested treble damages, a $10,000 penalty for each false or inflated claim, and interests and costs.

Because the debtors had filed a bankruptcy petition four days earlier, the

1. Because we hold that the stay does not apply, we do not reach the government's alternative argument that it is entitled to modification of the stay for cause under § 362(d)(1).

government's complaint did not name them as defendants. On August 25, 1987, the government filed a proof of claim in the bankruptcy court, asserting that it held an unsecured claim against the debtors for approximately $2,723,961. In seeking leave from the bankruptcy court to join the debtors in the Tennessee lawsuit, the government agreed that if it were permitted to join the debtors, it would not seek enforcement of the requested money judgment but only entry of judgment, which would fix the amount of the debtors' liability for violation of the FCA.[2]

The bankruptcy court held that § 362(b)(4) does not except the government's proposed FCA action against the debtors because the action is one solely for the pecuniary advantage of the government, rather than to protect public health or safety. *In re Commonwealth Cos., Inc.,* 80 B.R. 162, 165 (Bankr.D.Neb.1987). In support of its holding, the bankruptcy court concluded that Congress intended § 362(b)(4) to permit an action for money damages only if the damages are sought in conjunction with some sort of injunctive relief. *Id.* at 164. The district court affirmed, finding that the "pecuniary purpose" test used by the bankruptcy court was the correct legal standard and that the bankruptcy court's factual determinations in applying this test were not clearly erroneous.

## II.

■ Our standard of review is the same as that used by the district court. We review the bankruptcy court's legal conclusions *de novo* and its factual findings under the clearly erroneous standard. *Weg-*

*ner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir.1987).

It is undisputed that if not excepted by § 362(b)(4), the government's proposed FCA action against the debtors is subject to the automatic stay of § 362(a), which states that the filing of a bankruptcy petition

operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Section 362(b)(4) provides that the filing of a petition does not operate as a stay "under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."[3]

## A.

■ At the outset, we must reject the bankruptcy court's view that § 362(b)(4) applies only to actions to protect public health or safety.[4] The statutory language does not contain or suggest such a limitation of purpose. *See Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) (*"one* of the purposes of [the police or regulatory power] exception is to protect public health and safety") (emphasis added). Moreover, there are numerous decisions holding § 362(b)(4) applicable to

**2.** The government's complaint also alleged common-law unjust enrichment and sought the imposition of a constructive trust and/or equitable lien upon the proceeds of the fraud to the extent the government's legal remedy proved inadequate. However, the government also agreed that it would not attempt to enforce these equitable remedies if they were granted.

**3.** A related exception to the automatic stay is set forth in § 362(b)(5). Section 362(a)(2) stays the enforcement, against the debtor or property of

the estate, of a judgment obtained prepetition. Section 362(b)(5) provides that the filing of a petition does not operate as a stay "under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

**4.** For their part, the debtors acknowledge that § 362(b)(4) is not limited to such actions. Appellees' Brief at 16.

governmental actions or proceedings that did not concern public health or safety. *See, e.g., EEOC v. Rath Packing Co.,* 787 F.2d 318, 323–25 (8th Cir.) (Title VII employment discrimination suit), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); *Brock v. Rusco Indus. Inc.,* 842 F.2d 270, 273 (11th Cir.) (action to prevent sale of goods in violation of Fair Labor Standards Act), *cert. denied,* 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988); *SEC v. First Fin. Group,* 645 F.2d 429, 437–38 (5th Cir. Unit A May 1981) (civil enforcement action to enjoin purchase and sale of securities); *NLRB v. Evans Plumbing Co.,* 639 F.2d 291, 293 (5th Cir. Unit B Mar. 1981) (per curiam) (enforcement proceeding for reinstatement of employees with back pay).

■ Since the filing of their Chapter 11 petition, the debtor corporations have not engaged in any business activity. They argue that this fact renders § 362(b)(4) inapplicable in the instant case because the exception encompasses only governmental actions to prevent or stop an imminent or ongoing harm to the public. The Fifth Circuit flatly rejected this argument in *In re Commonwealth Oil Refining Co., Inc.,* 805 F.2d 1175, 1184–86 (5th Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987). We agree with the Fifth Circuit that the language of § 362(b)(4) "is unambiguous—it does not limit the exercise of police or regulatory powers to instances where there can be shown imminent and identifiable harm or urgent public necessity." *Id.* at 1184. We also find that the relevant legislative history is not to the contrary. *See id.* & n. 7.

■ The debtors contend the bankruptcy court was correct in concluding that the legislative history of § 362(b)(4) reveals a congressional intent to exclude any action for money damages from the exception unless the damages accompany or follow some type of injunctive remedy. We disagree. For an explanation of the meaning of § 362(b)(4), the circuit courts have consistently looked to the Senate and House Committee Reports on the Bankruptcy Reform Act of 1978. *See, e.g., EEOC v. Rath,* 787 F.2d at 324; *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383, 388–89 (3d Cir.1987); *Commonwealth Oil,* 805 F.2d at 1182–83. In regard to § 362(b)(4), (b)(5), the reports state:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of *fraud,* environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay.

> Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, *and to permit the entry of a money judgment,* but does not extend to permit enforcement of a money judgment.

S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838; H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6299 (emphasis added). This legislative history makes it plain that § 362(b)(4) permits the government to seek the entry of a money judgment as its sole remedy for the violation of a fraud or other police or regulatory law.[5] In accordance with the clearly expressed congressional intent, those circuits addressing the question have concluded that § 362(b)(4) does not exclude

---

5. In reaching a contrary conclusion, the bankruptcy court attached great significance to the following passage in the Senate and House Reports: "'Subsection (b) lists five exceptions to the automatic stay. *The effect of an exception is not to make the action immune from injunction.*'" 80 B.R. at 164 (quoting reports) (emphasis added by court). This passage simply refers to a bankruptcy court's discretionary authority

under 11 U.S.C. § 105 to enjoin an action that is excepted from the automatic stay by a provision of § 362(b). *See Missouri v. United States Bankruptcy Court,* 647 F.2d 768, 776–77 & n. 14 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). Thus, the language emphasized by the bankruptcy court says nothing about the scope of § 362(b)(4) or any other exception listed in § 362(b).

a governmental action to obtain the entry of a money judgment for a past violation of the law simply because money damages are the only relief sought in the action. *See United States v. Nicolet, Inc.,* 857 F.2d 202, 207–09 (3d Cir.1988); *EEOC v. Mc-Lean Trucking Co.,* 834 F.2d 398, 400–02 (4th Cir.1987).

B.

In determining that § 362(b)(4) does not apply in this case, the bankruptcy court purported to apply the so-called "pecuniary purpose" or "pecuniary interest" test.[6] The relevant inquiry under this test is whether the "specific acts the government wishes to carry out ... would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate."[7] *In re Charter First Mortgage, Inc.,* 42 B.R. 380, 382 (Bankr.D.Or.1984). We agree that as a general matter, § 362(b)(4) does not include governmental actions that would result in a pecuniary advantage to the government *vis à vis* other creditors of the debtor's estate.[8] This limitation on the scope of § 362(b)(4) is consistent with Congress' rationale for not extending the exception to permit the enforcement of a money judgment:

> Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

S.Rep. No. 989 at 52; H.R.Rep. No. 595 at 343, 1978 U.S.Code Cong. & Admin.News 5838, 6299. The limitation is also consistent with our decision in *Missouri v. Bankruptcy Court,* 647 F.2d at 776, where we held § 362(b)(4) inapplicable to the enforcement of state laws governing the operation and liquidation of insolvent grain warehouses because the laws "directly conflict[ed] with the control of the property [of the estate] by the bankruptcy court." *See also In re Cash Currency Exch., Inc.,* 762 F.2d 542, 555 (7th Cir.) (following this holding), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.) (proceedings to recover excess rents retained by debtor landlord within § 362(b)(4) exception because no harm to other creditors), *cert. denied,* 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987); *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc.,* 700 F.2d 1279, 1284 (9th Cir. 1983) (court order directing law firm to

6. The court also referred to the so-called "public policy" test, but did not explicitly rely on it in reaching its decision. As described by the Sixth Circuit, the public policy test "'distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are excepted from the automatic stay.'" *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir.1986) (quoting *In re Herr,* 28 B.R. 465, 468 (Bankr.D.Me.1983)). The bankruptcy court did not find that the government's proposed FCA action would adjudicate private rights, and the debtors do not contend that the action would constitute such an adjudication. Furthermore, as discussed *infra* at 525, 526, we conclude that a civil FCA action effectuates important public policies. There is a suggestion in the bankruptcy court's opinion that it based its decision in part on a finding regarding the government's motivation in seeking to join the debtors in the pending FCA action. *See* 80 B.R. at 165 (quoting *In re Wellham,* 53 B.R. 195, 198 (Bankr.M.D.Tenn.1985)). We reject this approach for two reasons. First, an inquiry into the subjective purposes behind a given FCA law-

suit "would be amorphous and speculative." *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 1904, 104 L.Ed.2d 487 (1989) (Kennedy, J., concurring). Second, the appropriate analysis under § 362(b)(4) is one which focuses on the purposes underlying the law that the government is attempting to enforce. *See EEOC v. Rath,* 787 F.2d at 324–25.

7. Under the circumstances of this case, we need not address the applicability of § 362(b)(4) to a governmental action that would provide certain individuals with a pecuniary advantage over other creditors of the estate.

8. This should not be considered an absolute rule because there may be instances where Congress intended that the preference resulting from the enforcement of a particular statutory provision would take precedence over the Bankruptcy Code's distribution scheme. *See Brock v. Rusco,* 842 F.2d at 272–74 (enforcement of Fair Labor Standards Act's prohibition against sale of goods manufactured in violation of minimum wage provision).

**524**

return proceeds of debtor's unlawful activities within police or regulatory power exception because order did not give government or defrauded investors preference over other creditors).[9]

■ The bankruptcy court's finding that the proposed FCA action is solely for the pecuniary advantage of the government is both factually and legally incorrect. It is undisputed that the government is attempting only to obtain the entry of a money judgment against the debtors for their alleged violation of the FCA. The entry of judgment would simply fix the amount of the government's unsecured claim against the debtors. It would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate.

Despite the fact that the government's proposed FCA action would not give it a pecuniary advantage over other creditors, the debtors contend that § 362(b)(4) cannot apply here because the action is one "to protect a pecuniary interest." This language has its origin in "the isolated remarks of a congressman and a senator during floor debates" on the Bankruptcy Reform Act. *In re Mansfield Tire & Rubber Co.,* 660 F.2d 1108, 1112 (6th Cir.1981). The remarks suggested a limitation on § 362(b)(4):

> This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. H11089, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6436, 6444–45 (statement of Rep. Edwards); 124 Cong.

Rec. S17406, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6505, 6513 (statement of Sen. DeConcini). As the Third Circuit has observed, these remarks "do no more than state the very problem" courts must resolve in determining the parameters of § 362(b)(4). *Penn Terra Ltd. v. Department of Envtl. Resources,* 733 F.2d 267, 274 n. 6 (3d Cir.1984). Contrary to the debtors' contentions, our holding in *Missouri v. Bankruptcy Court,* 647 F.2d at 775–76, resolved this problem by classifying an action to protect a "pecuniary interest" in property of the debtor or of the estate as one which directly conflicts with the bankruptcy court's control of that property, perhaps the clearest example of an action resulting in a pecuniary advantage over other creditors. To the extent that the floor debate remarks concerning the scope of § 362(b)(4) must be given meaning, this interpretation is far more compatible with the express statutory terms and the Senate and House Reports than the view urged by the debtors. The debtors' view does find support in a number of bankruptcy court decisions that have applied the "pecuniary interest" notion in such a way as to effectively preclude the application of § 362(b)(4) to any action or proceeding that includes a significant pecuniary element. *See, e.g., In re Greenwald,* 34 B.R. 954, 956–57 (Bankr.S.D.N.Y.1983). However, this approach has received the following insightful criticism, with which we agree:

> While it is true that the assessment by the government of a debtor's liability for violations of law may look like the "protection of a pecuniary interest," such a reading of section 362(b)(4) and of that provision's legislative history would render the exception unworkable. It is generally the case that the government regulates private conduct by establishing

9. Although most of the circuits have addressed the application of § 362(b)(4), the Sixth Circuit is the only one that has adopted the pecuniary purpose "test." *See In re Commerce Oil Co.,* 847 F.2d 291, 295–96 (6th Cir.1988) (holding that § 362(b)(4) applied to action to assess civil damages and penalties against debtor for violation of state environmental statute); *see also Nicolet,* 857 F.2d at 209 (noting that pecuniary purpose test is "[a]nother factor ... sometimes added to [§ 362(b)(4) ] calculus"); *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo,* 805 F.2d 440, 445 n. 4 (1st Cir.1986) (discussing test in dictum). We find no fault with the *Commerce Oil* court's use of the test to the extent the court undertook a pecuniary advantage analysis rather than an unfocused inquiry into the state's "pecuniary interest." *See* 847 F.2d at 296.

penalties for certain violations of rules it prescribes. This does not mean that when it seeks to enforce the regulatory scheme in question, it is merely seeking to protect some "pecuniary interest" in the monies represented by the penalties or damages levied.... Under the "pecuniary interest" test as it seems to be applied, a money judgment could *never* be entered against a debtor, for it would necessarily represent only a "pecuniary interest" in the property of the debtor, thus triggering the automatic stay.

*CPI Crude, Inc. v. United States Dep't of Energy,* 77 B.R. 320, 323 (D.D.C.1987) (emphasis in original); *see also In re Compton Corp.,* 90 B.R. 798, 803–05 (N.D.Tex.1988) (employing similar analysis), *appeal dismissed,* 889 F.2d 1104 (Temp.Emer.Ct.App. 1989); *In re Hughes,* 87 B.R. 49, 51 (Bankr. S.D.Ohio 1988) (concurring in *CPI's* criticism); *In re Career Consultants, Inc.,* 84 B.R. 419, 423–24 (Bankr.E.D.Va.1988) (same). In sum, because the proposed FCA action would not conflict with the bankruptcy court's control of property of the debtor or of the estate, and would not otherwise create a pecuniary advantage for the government, we decline to place it outside the scope of § 362(b)(4) on the ground that it seeks to "protect" the government's "pecuniary interest."

### C.

■ As noted above, *supra* at 522, the legislative history of § 362(b)(4) explicitly recognizes that a fraud law is a police or regulatory law. The FCA is certainly a fraud law. *See* S.Rep. No. 345, 99th Cong., 2d Sess. 2, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5266 (stating that 1986 amendments to FCA are intended to make the statute more useful as "the [g]overnment's primary litigative tool for combatting fraud"). It seems inescapable then that a governmental action attempting to fix damages for violation of the FCA comes within § 362(b)(4). *See EEOC v.*

*Rath,* 787 F.2d at 325 (describing enforcement of police or regulatory laws listed in § 362(b)(4)'s legislative history as "expressly exempt from the automatic stay").

■ The debtors argue though that absent very rare circumstances not present here, the sole purpose of the FCA is to make the government whole for monetary loss and therefore enforcement of the statute does not qualify for the § 362(b)(4) exception. If this characterization of the FCA as strictly compensatory in nature were accurate, there might be reason to hold § 362(b)(4) inapplicable to the government's proposed FCA action against the debtors on the ground that the action could be considered analogous to a lawsuit for contract damages. *See In re Corporacion de Servicios Medicos Hospitalarios de Fajardo,* 805 F.2d 440, 445–47 (1st Cir.1986) (holding that § 362(b)(4) does not apply to action by governmental unit to enforce its contractual rights); *Nicolet,* 857 F.2d at 209 (indicating that § 362(b)(4) would not apply to a lawsuit by the government seeking "a remedy for a private contract breach"). However, we believe the FCA serves other purposes that bring actions to enforce it within the police or regulatory power exception.

In *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 387–88, 87 L.Ed. 443 (1943), the Supreme Court stated that the "chief purpose" of the FCA "was to provide for restitution to the government of money taken from it by fraud." The debtors contend that *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), establishes this as the FCA's sole purpose. However, *Halper* simply held that a civil sanction under the FCA will constitute "punishment" for purposes of the double jeopardy clause if it bears no rational relationship to the government's actual damages and expenses. *Id.* 109 S.Ct. at 1901–04.[10] Indeed, the Court made a point of noting that "for

---

**10.** The Court limited its holding to a case where the defendant has previously been criminally punished for the same conduct. *Id.* at 1903. Approximately one year prior to filing its bankruptcy petition, Commonwealth Electric pleaded *nolo contendere* to an antitrust charge based on the bid-rigging conspiracy. The record before us does not indicate whether any criminal penalty has been imposed upon the corporation.

the defendant even remedial sanctions carry the sting of punishment." *Id.* at 1901 n. 7; *see also United States v. Bornstein*, 423 U.S. 303, 309 & n. 5, 311 & n. 6, 96 S.Ct. 523, 528 & n. 5, 529 & n. 6, 46 L.Ed.2d 514 (1976) (noting that FCA was adopted for the purpose of punishing and preventing frauds); *cf. American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575–76, 102 S.Ct. 1935, 1947–48, 72 L.Ed.2d 330 (1982) (antitrust treble damages are "designed in part to punish past violations" and also serve to deter future violations and compensate victims). We find the *Halper* decision was not meant to invalidate the view that the FCA's purposes are both "to make the government whole (restitution) and to deter fraud against the government." *United States v. O'Connell*, 890 F.2d 563, 568 (1st Cir.1989); *see also United States v. McLeod*, 721 F.2d 282, 285 (9th Cir.1983) ("damages provision of the False Claims Act is meant not only to compensate the government fully but also to deter fraudulent claims from being filed against it"). In *Bornstein*, 423 U.S. at 316–17, 96 S.Ct. at 531–32, the Supreme Court held that the government's actual damages must be doubled (now trebled) under the FCA before compensatory payments are subtracted because "[t]his method of computation, which maximizes the deterrent impact of the double-damages provision ... best comports in our view with the language and purpose of the Act." The objective of deterring fraud was reinforced by the 1986 amendments to the FCA, which require the payment of treble damages and increase the forfeiture penalty for each false claim submitted by the defendant.[11] *See United States v. Ettrick Wood Prods., Inc.*, 683 F.Supp. 1262, 1265 (W.D.Wis.1988) ("[t]he increased penalties in the 1986 amendments ... indicate that Congress sought both to deter the increasingly pervasive and severe problem

of fraud and to enhance the government's ability to recover losses sustained as a result of fraud"); *United States v. Hill*, 676 F.Supp. 1158, 1167 (N.D.Fla.1987) ("the amendments seek to deter [g]overnment fraud through the imposition of substantial forfeitures and treble damages"). After a thorough review of the 1986 amendments and their legislative history, the court in *Hill*, 676 F.Supp. at 1169, concluded that the amendments "evince a clear effort by Congress to address a paramount national concern ... in preventing and remedying government fraud." Other courts examining the purposes of the amendments have reached the same conclusion. *See Kelsoe v. Federal Crop Ins. Corp.*, 724 F.Supp. 448, 451 (E.D.Tex.1988); *United States ex rel. Stinson v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1253 (S.D.Fla. 1989); *United States ex rel. Luther v. Consolidated Indus., Inc.*, 720 F.Supp. 919, 921 (N.D.Ala.1989); *Ettrick Wood*, 683 F.Supp. at 1265.

In view of the case law identifying the purposes of the FCA and the statute's legislative history, we conclude that civil actions by the government to enforce the FCA serve to inflict the "sting of punishment" on wrongdoers and, more importantly, deter fraud against the government, which Congress has recognized as a severe, pervasive, and expanding national problem. The police and regulatory interests furthered by enforcement of the FCA are undeniably legitimate and substantial. The fact that the statute's chief purpose is to make the government whole does not reduce the weight of these interests so as to make their vindication insufficient to qualify for the § 362(b)(4) exception from the automatic stay. We find nothing in the language or legislative history of the exception that warrants such an artificial restriction on its scope.[12]

---

11. The government is entitled to recover forfeitures even without proof of any damages or proof that payments were made on the claims. *See* S.Rep. No. 345 at 8.

12. In addition to the bankruptcy court decision in the instant case, three other decisions have held that a civil FCA action by the government was not excepted from the automatic stay under

§ 362(b)(4). *See In re Chateaugay Corp.*, 115 B.R. 28, 31–33 (Bankr.S.D.N.Y.1988); *In re Wellham*, 53 B.R. 195, 198 (Bankr.M.D.Tenn.1985). We find these decisions unpersuasive because each of them applied reasoning similar to the flawed analysis of the bankruptcy court in this case.

### D.

The debtors' final argument is that § 362(b)(4) should not apply in this case because the government could assert its FCA claim in the bankruptcy court and defending the FCA action in Tennessee would result in the dissipation of estate assets due to increased litigation expenses. The Fourth Circuit has rejected these reasons as grounds for holding § 362(b)(4) inapplicable. *McLean Trucking*, 834 F.2d at 400–01. We agree that "the language of § 362, its legislative history and the case law require [this] conclusion." *Id.* at 401. As we have previously observed, "Congress by excepting certain actions from the automatic stay provision recognized that the debtor would likely incur litigation expenses as a result of any excepted lawsuit." *EEOC v. Rath*, 787 F.2d at 325 (holding that litigation expenses alone do not justify a discretionary stay under § 105). To hold that a governmental action does not come within § 362(b)(4) for the reasons urged here would run counter to a fundamental policy behind the police or regulatory power exception, which is "to prevent the bankruptcy court from becoming a haven for wrongdoers." *Commodity Futures*, 700 F.2d at 1283.[13]

It is important to recognize that debtors are not left without an avenue for relief if they or the estate would be harmed by a governmental action excepted from the automatic stay under § 362(b)(4). The bankruptcy court has " 'ample other powers' " to stay such an action, *Missouri v. Bankruptcy Court*, 647 F.2d at 776 n. 14 (quoting § 362(b)'s legislative history), including the discretionary power under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Discretionary § 105 stays are to be granted under the usual rules governing the issuance of injunctions. *EEOC v. Rath*, 787 F.2d at 325. They will be granted only if a party shows a necessity for a stay. *Id.* Thus, " '[b]y excepting an act or action

from the automatic stay, [§ 362(b)] simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay.' " *Missouri v. Bankruptcy Court*, 647 F.2d at 777 n. 14 (quoting § 362(b)'s legislative history); *see also Commerce Oil*, 847 F.2d at 297 (requiring debtor to use § 105 to protect estate from proceedings excepted under § 362(b)(4) does not "impose[ ] any unintended or undue burden on the estate").

### III.

In conclusion, we hold that the government's proposed FCA action against the debtors is excepted from the automatic stay under § 362(b)(4) up through the entry of a money judgment. Accordingly, the judgment of the district court is reversed.

---

**13.** We note that application of the § 362(b)(4) exception in this case has the added beneficial effect of furthering judicial economy and reducing the burden on federal taxpayers because the government can litigate the FCA action against the debtors and the other defendants in a single forum.