In re: UNIVERSAL LIFE CHURCH, INC., a California non-profit corporation, Debtor.

UNIVERSAL LIFE CHURCH, INC., a California non-profit corporation, Appellant,

v.

UNITED STATES of America, Appellee.

In re: Universal Life Church, Inc., a California non-profit corporation, Debtor.

UNIVERSAL LIFE CHURCH, INC., a California non-profit corporation, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 96–15122, 96–15123.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1997.

Decided Oct. 6, 1997.

As Amended Dec. 30, 1997.

Edward O.C. Ord, Ord & Norman, San Francisco, CA, for appellant.

G. Patrick Jennings and Gary D. Gray, United States Department of Justice, Washington, DC, for appellee.

Before: TASHIMA and THOMAS, Circuit Judges, and SEDWICK,* U.S. District Judge.

* The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

THOMAS, Circuit Judge:

A religious organization seeks to have an Internal Revenue Service ("IRS") revocation of its tax-exempt status declared void as violative of bankruptcy's automatic stay. We hold that the IRS's administrative actions were permissible under the police and regulatory power exception to the automatic stay and affirm.

## I.

Universal Life Church, Inc. ("Church"), is a California nonprofit corporation. The IRS denied the Church's application for tax exempt status in 1969 and again in 1970 on the ground that the Church had engaged in activities outside the religious activities contemplated by I.R.C. § 501(c)(3). After paying the taxes and interest due for fiscal year ending April 30, 1969, the Church brought a suit for refund and prevailed. *Universal Life Church, Inc. v. United States,* 372 F.Supp. 770 (E.D.Cal.1974). The district court found that the contested activities (ordination of ministers, granting of church charters, and issuance of honorary doctorates) were not a substantial enough part of the Church's activities to justify denying the exemption. *Id.* at 775–76.

In 1984, the IRS revoked the Church's tax exempt status for the fiscal years ending April 30, 1978 through April 30, 1981. The Church brought a declaratory judgment action in the Court of Federal Claims with respect to its tax-exempt status for these years. The Court of Federal Claims upheld the revocation on the ground that the Church had not been operated solely for tax-exempt purposes as required by I.R.C. § 501(c)(3); it gave tax advice to its ministers and failed to control the non-exempt activities of its congregations. *Universal Life Church, Inc. v. United States,* 13 Cl.Ct. 567 (1987), *aff'd,* 862 F.2d 321 (Fed.Cir.1988).

The Church then commenced an action in the Tax Court for a redetermination of the deficiencies asserted by the Commissioner of Internal Revenue ("Commissioner") for these years. *Universal Life Church, Inc. v. Commissioner,* Tax Ct. dkt. no. 8288–85. The parties reached a settlement, and the Tax Court entered a judgment based on the settlement determining the deficiencies against the Church for fiscal years 1978–1980.

The IRS began investigating the Church's tax exempt status for fiscal years ending April 30, 1982 through April 30, 1985. The Church filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code on November 30, 1989. The Church then commenced an adversary proceeding under 11 U.S.C. § 505 to determine its federal and state liabilities for certain taxable periods between 1978 and 1990. In its complaint, the Church maintained that it was exempt from federal income taxes for the fiscal years ending April 30, 1978 through April 30, 1990.

The IRS revoked the Church's tax exempt status on January 8, 1991 for fiscal years ending April 30, 1982 through April 30, 1985. The revocation letter further stated that the Church was required to file federal income tax returns for these years, pursuant to I.R.C. § 6012. The total amount of taxes, with interest, is estimated by the Church to be in excess of six million dollars.

On July 20, 1993, the Church filed a motion in the adversary proceeding seeking a declaratory judgment that the IRS's revocation of the Church's tax exempt status was void as a violation of the automatic stay provided by 11 U.S.C. § 362(a). The Church also sought damages pursuant to 11 U.S.C. § 362(h).

The bankruptcy court denied the motion, holding that even if the revocation was an act that normally would have been stayed, it came within the exception under section 362(b)(4) for acts to enforce police or regulatory powers. The bankruptcy court also ordered the Church to file tax returns for the disputed tax years. The district court affirmed. The district court concluded that although revocation violated the automatic stay provision of section 362(a)(1), it fell within the exception provided by section 362(b)(4).

On appeal, a motions panel denied the IRS's motion to dismiss the appeal for lack of finality, and denied the Church's motion for stay of the returns order. We consolidated all pending issues for consideration on the merits.

## II.

The Church makes a persuasive argument that under *Delpit v. Commissioner*, 18 F.3d 768 (9th Cir.1994), the IRS's 1991 revocation of the Church's tax exempt status violated the automatic stay provided by 11 U.S.C. § 362(a). However, we need not reach this issue because the IRS's revocation of the Church's tax exempt status clearly falls within an exception to section 362(a). We thus begin our analysis by assuming, without deciding, that the IRS violated the automatic stay in this case.

Assuming a stay violation, our first inquiry must be whether the IRS's administrative actions fall within an exception to the automatic stay. The exception at issue in this case, section 362(b)(4), provides an automatic stay exception for "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." This section permits government to initiate or continue an action under its police or regulatory powers free of the restrictions of the automatic stay. 3 Collier on Bankruptcy ¶ 362.05[5][b], at 362–58 (15th ed.1996). The theory of this exception is because bankruptcy should not be "a haven for wrongdoers," the automatic stay should not prevent governmental regulatory, police and criminal actions from proceeding. 3 Collier on Bankruptcy ¶ 362.05[5][a], at 362–54 (15th ed.1996).

The phrase "police or regulatory power" refers to the enforcement of laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 591 (9th Cir.1993). The section 362(b)(4) exception has been applied in a variety of contexts, including labor law enforcement, *NLRB v. Twin Cities Electric*, 907 F.2d 108 (9th Cir.1990), state bar disciplinary proceedings, *Wade v. State Bar of Arizona*, 948 F.2d 1122, 1123–24 (9th Cir.1991) and employment discrimination actions brought by the Equal Employment Opportunity Commission,

*EEOC v. Hall's Motor Transit Co.*, 789 F.2d 1011, 1014 (3d Cir.1986).

There are two tests for determining whether agency actions fit within the section 362(b)(4) exception: (1) the "pecuniary purpose" test and (2) the "public policy" test. *NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 833 (9th Cir.1991). Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare. *Id.* If the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed. *Thomassen v. Division of Med. Quality Assurance (In re Thomassen)*, 15 B.R. 907, 909 (9th Cir. BAP 1981).

The public policy test "distinguishes between government actions that effectuate public policy and those that adjudicate private rights." *Continental Hagen*, 932 F.2d at 833 (quoting *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986)).

The question in this case is whether an IRS letter revoking the tax exempt status of a religious corporation meets either test. We hold it meets both. The district court found, and we agree, that the revocation was an exercise of the IRS's police or regulatory power because revocation promotes public welfare by assuring the public and potential donors that contributions will be used for legitimate charitable purposes. Indeed, "[c]haritable exemptions are justified on the basis that the exempt entity confers a public benefit—a benefit which the society or the community may not itself choose or be able to provide . . . ." *Bob Jones Univ. v. United States*, 461 U.S. 574, 591, 103 S.Ct. 2017, 2028, 76 L.Ed.2d 157 (1983). "When the Government grants exemptions or allows deductions all taxpayers are affected; the very fact of the exemption or deduction for the donor means that other taxpayers can be said to be indirect and vicarious 'donors'." *Id.*

Thus, determination that an organization may not meet the standards for tax exempt status in itself serves a general pub-

lic welfare purpose beyond any pecuniary application in a particular case. As the district court noted in this case, "[t]his activity may be characterized as a type of fraud detection, assuring potential donors that the organization will not use their contributions for personal profit, but for the charitable purposes encouraged by law." Fraud detection is consistent with the purpose of the exception. Detection of fraud had been sustained as a valid basis for invoking the exception even when there is an additional pecuniary interest at stake. For example, a civil suit brought pursuant to the Federal False Claims Act is sufficient to satisfy the section 362(b)(4) exception. *United States v. Commonwealth Cos. (In Re Commonwealth Cos.),* 913 F.2d 518 (8th Cir.1990).

The legislative history is similarly in accord with this view:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 95–989 at 52 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838; H.R.Rep. No. 95–595 at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299.[1]

This conclusion is consistent with our previously expressed view that revocation serves a law enforcement function. As we noted in *Church of Scientology Int'l v. IRS,* 995 F.2d 916, 919 (9th Cir.1993): "[W]e are convinced that the EO [Exempt Organizations branch of the IRS] performs a law enforcement

function by enforcing the provision of the federal tax code that relate to qualification for tax exempt status." *See Lewis v. IRS,* 823 F.2d 375, 379 (9th Cir.1987) ("The IRS has the requisite law enforcement mandate and the affidavits presented in this case establish a rational nexus between enforcement of a federal law and the document for which the Freedom of Information Act exemption is claimed.").[2] As the district court correctly observed, "[r]evocation of tax-exempt status implements a public policy function regulating the government's interest in advancing the policies underlying the charitable purposes exemptions provided by Congress."

■ We reject the Church's position that the IRS must have no pecuniary motive at all to fall within section 362(b)(4). There is nothing in the statute that requires the IRS's action to serve only welfare purposes before it qualifies for the exception. Other circuits have found to the contrary of the Church's position as well. "In accordance with the clearly expressed congressional intent, those circuits addressing the question have concluded that § 362(b)(4) does not exclude a governmental action to obtain the entry of a money judgment for a past violation of the law simply because money damages are the only relief sought in the action." *Commonwealth Cos.,* 913 F.2d at 522–23 (citing *United States v. Nicolet, Inc.,* 857 F.2d 202, 207–09 (3d Cir.1988); *EEOC v. McLean Trucking Co.,* 834 F.2d 398, 400–02 (4th Cir. 1987)). Indeed, most government actions which fall under this exemption have some pecuniary component, particularly those associated with fraud detection. This does not abrogate their police power function. Only if the action is pursued "solely to advance a pecuniary interest of the governmental unit" will the automatic stay bar it. *Thomassen,* 15 B.R. at 909.

---

1. We note that the parties disagree about the extent to which this revocation letter has informed the public about the Church's tax exempt status. The record is unclear and we conclude we need not determine the specific impact in this case. In examining qualification for a 11 U.S.C. § 362(b)(4) exception, the critical inquiry is the policy underlying issuance of a revocation letter; that is, whether charitable status revocation in itself serves purely pecuniary purposes or not. Thus, the question of whether the informational function has been served in this particular case is not relevant. We conclude as a general matter that when the IRS revokes the tax exempt status of organizations which do not meet the 501(c)(3)

requirements, it serves a public trust function in assuring the public that 501(c)(3) tax exempt status is conferred and retained only by organizations engaged in appropriately charitable functions.

2. We decline the Church's invitation to limit the import of these observations to FOIA cases. As noted by the *Church of Scientology* court, the inquiry was directed broadly to " 'an examination of the agency itself to determine whether the agency may exercise a law enforcement function.' " 995 F.2d at 919 (quoting *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 748 (9th Cir.1979)).

Our holding in *Delpit* is not to the contrary. As we noted earlier, *Delpit* involved the application of section 362(a), not exceptions to the section. If we were to consider *Delpit* in the exception context, it would provide an example of the application of the exception. In *Delpit*, we held that an appeal constituted a continuation of the entire tax assessment and collection proceeding and was stayed. Thus, *Delpit* involved an attempt by the government to advance a purely pecuniary interest without any additional public policy purpose. By contrast, the tax exempt status revocation letter here has a public policy purpose and, by itself has no pecuniary effect. The estate will not be affected and the Church has a speedy and adequate remedy by which to challenge the IRS action in the section 505 adversary proceeding.

■ The Church argues that section 362(b)(4) is limited by its language to the first part of section 362(a)(1) and does not except the second part of section 362(a)(1) which prohibits actions "to recover a claim against the debtor that arose before the commencement of the case." The Church then argues that the second branch of section 362(a)(1) describes the IRS's actions against it, and therefore a provision of the stay exists for which no exception is provided. However, a proper construction of section 362(a)(1) does not support this position.

The second branch of section 362(a)(1) uses as its subject "action or proceeding against the debtor" from the first branch. In other words, section 362(a)(1) prohibits actions against the debtor that were or could have been commenced before the petition for bankruptcy was filed, and section 362(a)(1) prohibits actions to recover a claim against the debtor that arose before the petition for

bankruptcy was filed. Thus, the section 362(b)(4) exemption includes both, because it is targeted at actions or proceedings against the debtor.[3]

Because the issuance of a letter revoking tax exempt status falls within the section 362(b)(4) exception, the district court's affirmation of the bankruptcy court on this issue was appropriate.

### III.

The Church argues that the IRS's position in this case is in tension with the position it took in *IRS v. Sulmeyer (In re Grand Chevrolet)*, 153 B.R. 296 (C.D.Cal.1993), and thus the IRS should be judicially estopped from arguing the inconsistent position.

■ We reject the Church's argument. The jurisdictional issues in *Sulmeyer* are different from the ones here, such that no inconsistency exists.[4] The Church also argues that because a federal district court determined that it was entitled to tax exempt status for the fiscal year ending April 30, 1969, the IRS is collaterally estopped from arguing that the Church is not entitled to tax exempt status for the years in question in this suit.

■ The applicability of collateral estoppel is determined by: (1) whether the issues presented are in substance the same in the present and prior litigation; (2) whether controlling facts or legal principles have changed significantly since the prior judgment; and (3) whether other special circumstances warrant an exception to the normal rules of preclusion. *Richey v. IRS*, 9 F.3d 1407, 1410 (9th Cir.1993). As the district court correctly determined, the issues presented here are not in substance the same as those presented

---

**3.** Neither *Pizza of Hawaii, Inc. v. Department of Taxation (In re Pizza of Hawaii, Inc.)*, 12 B.R. 796 (Bankr.D.Haw.1981), nor *Coben v. LeBrun (In re Golden Plan of California, Inc.)*, 37 B.R. 167 (Bankr.E.D.Cal.1984), cases cited by the Church, is contrary to our decision in this case. *Pizza of Hawaii*, involved the state Liquor Commission's refusal to renew a debtor's liquor license without payment of taxes, interest, and penalties owed. *Pizza* held that the state's action did not qualify for the section 362(b)(4) exception because it "does not in any way deal with the preservation of the health, safety or welfare of the public." 12 B.R. at 799. In *Coben*, the state Franchise Tax Board suspended the corporate powers of the debtor entity for nonpayment of

taxes. *Coben* held that the section 362(b)(4) exception was unavailable because "the primary purpose of Cal.Rev. & Tax Code § 23301 is the protection of a pecuniary interest ... and not the protection of the public health or safety...." 37 B.R. at 170 (quotation omitted). In the instant appeal, by contrast, the IRS's action protects a public trust in the 501(c)(3) certification; no such public trust was at stake in either *Pizza of Hawaii* or *Coben*.

**4.** In *Sulmeyer*, the IRS argued that an actual controversy must be at issue before the bankruptcy court has jurisdiction to consider a section 505 motion. Here, it is undisputed that an actual controversy exists.

in the prior litigation in question[5], and a controlling fact has changed significantly since the prior judgment.[6] Thus, collateral estoppel does not apply.

## IV.

 We also find no error in the transfer of one of the district court appeals to another judge for consolidation. The district judges correctly determined that the two cases were sufficiently related to permit consolidation. The Church asserts that by this process the government impermissibly "selected" the district judge who would hear the appeals in violation of due process. This claim is meritless because the government did not "select" the district judge who heard the appeals. The assignment was made pursuant to local rule by the court, not the government. The district court's action was appropriate: the two appeals originated out of the same bankruptcy matter and involved the same parties.

## V.

 The Church challenges the bankruptcy court's order compelling it to file tax returns. However, the district court did not rule on this issue. In assessing whether we have appellate jurisdiction over a bankruptcy appeal, we must examine finality at two levels: (1) whether the bankruptcy court decision was final and (2) whether the decision of the district court or the Bankruptcy Appellate Panel decision was final. *King v. Stanton (In Re Stanton)*, 766 F.2d 1283, 1285 (9th Cir.1985). Absent a final order from the district court, we have no jurisdiction to consider this appeal and therefore must dismiss it.[7] 28 U.S.C. § 158(d). Dismissal of this portion of the appeal makes it unnecessary to consider whether the order should be stayed pending appeal, as argued by the Church.

## CONCLUSION

The district court correctly determined that 11 U.S.C. § 362(b) provided an exception to the automatic stay in this instance, allowing the IRS to issue a letter revoking the Church's tax-exempt status. Because the district court did not decide whether the bankruptcy court had the power under 11 U.S.C. § 105 to order the Church to file a federal income tax return, we have no jurisdiction to consider that issue on appeal. None of the Church's remaining issues on appeal have merit.

AFFIRMED IN PART AND DISMISSED IN PART.

## ORDER

### Dec. 30, 1997

The United States has moved the Court to modify its opinion. Neither the Federal Rules of Appellate Procedure, nor the Ninth Circuit Rules provide for such a motion. Accordingly, we construe it as a petition for rehearing. Thus construed, the motion is denied.

However, the Court sua sponte amends the opinion as follows:

> [Editor's Note: Amendments incorporated for purpose of publication.]

With these amendments, the opinion dated October 6, 1997 is amended.

---

5. The district court's determination in *Universal Life Church, Inc. v. United States*, 372 F.Supp. 770 (E.D.Cal.1974) was based on its finding that the Church's ordination of ministers, its granting of church charters, and its issuance of Honorary Doctor of Divinity titles were not substantial activities which did not further any religious purpose. *Id.* at 775–76. The IRS's decision to revoke the tax-exempt status was based on the following, different grounds: the net earnings of the Church inured to the benefit of private individuals; the Church provided advice to individuals on the purported tax benefits available to ministers of the Church; and the Church furthered a substantial nonexempt purpose in administering and operating the receipts and disbursements program to its members and congregations.

6. "In 1984, the Internal Revenue Service (IRS) revoked [the Church's] tax exempt status as a corporation organized and operated exclusively for religious purposes, for the fiscal years ending April 30, 1978, through April 30, 1981. That revocation has been upheld in the federal courts." *Carter v. United States*, 973 F.2d 1479, 1483 (9th Cir.1992).

7. A motions panel denied the IRS's motion to dismiss for lack of finality. "While we give deference to motions panel decisions made in the course of the same appeal, we have an independent duty to decide whether we have jurisdiction." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir.1991).